122

THE STATE OF OHIO, APPELLANT, *v.* TIMSON, APPELLEE.

(No. 73-733—Decided May 8, 1974.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Miles C. Durfey,* for appellant.

*Mr. John W. Timson, in propria persona.*

CORRIGAN, J.  Defendant, John W. Timson, by motion to suppress before his trial, challenged the constitutionality of the use of evidence seized during a search of his person incident to an arrest which he claims was illegal. The issue of the constitutionality of the arrest and the ensuing search and seizure was decided in defendant's favor by the Court of Appeals, and we affirm that judgment for the reasons stated herein.

## I.

The testimony reflected by the record apposite to the issue of the legality of the arrest on December 28, 1971, comes from a witness for the state, Captain Carl Rose.

Upon direct examination, he testified, as follows:

"Q. Would you describe to the ladies and gentlemen of the jury, Captain Rose, what you did on the occasion of seeing Mr. Timson come into your offices?

"A. Mr. Williams had prior told me that there was a federal warrant on file for Mr. Timson, and if I saw him, to pick him up and take him to jail, knowing that he came into our office quite frequently there to have papers notarized.

"Mr. Timson came in, and I made a call to the jail to get a deputy to help me. The lines were busy.

"And I walked up behind Mr. Timson, told him he was

under arrest, there was a warrant on file for his arrest, shook him down and took a pistol from him.

"Q. And where was that weapon located on his person, sir?

"A. In his right-hip pocket.

"Q. Did he have a suitcoat on, sir?

"A. Yes.

"Q. And you personally removed that weapon from his pocket; is that correct?

"A. I did.

"Q. Did you examine the weapon itself, sir?

"A. Not at that particular time. I handed it to deputy James Jordan."

Later, cross-examination elicited the following answers from Captain Rose:

"Q. Did you tell the defendant what he was under arrest for?

"A. I merely told him that there was a federal warrant on file for him.

"Q. But you didn't know what he was under arrest for?

"A. No."

The record reveals that the federal warrant Captain Rose had been told about, and which caused him to arrest Timson, was a bench warrant[1], filed December 27, 1971,

---

[1]Bench Warrant, in pertinent part, reads:

"By court order of December 22, 1971, this court denied the motion of John W. Timson for the return of his complaint in the case of *John W. Timson* v. *George Tyack, etc.*, Miscellaneous No. 815.

"On December 27, 1971, John W. Timson appeared in the office of the clerk of courts and requested to see the case file in Miscellaneous No. 815. John W. Timson then removed the complaint from said file and left the courthouse.

"This act being in implicit contempt of the order of this court dated December 22, 1971, because of the contemptuous removal of such property from the files of this court and its appropriation to his own use, you are therefore hereby commanded to arrest John W. Timson forthwith, hold in custody and bring him before this court on December 28, 1971 at 2:30 p. m. to show cause why he should not be punished for contempt.

and signed by the United States District Judge. That document, directed to the United States Marshal, ordered that Timson be arrested and brought before the court to show cause why he should not be punished for contempt for removing a pleading from a court file in violation of a previous court order. Parenthetically, the evidence in this case shows that defendant appeared in federal court on the day following his arrest, returned the document in question and purged himself of such contempt and was released from any further responsibility in the matter.

In the manner shown by the excerpted fragments of the voluminous record in this case, the total impetus for Timson's arrest without a warrant by Captain Rose was the information received from deputy sheriff Williams that there was a federal warrant in the hands of the United States Marshal for his arrest.

The law on arrest in Ohio is quite clear. Generally, there must be a warrant of arrest issued by a proper authority before one may be arrested. However, certain statutes provide for arrest without a warrant under certain circumstances. For example, R. C. 2935.03[2] provided that

---

"U. S. MARSHAL'S RETURN

"Received this bench warrant December 27, 1971 and executed same by the arrest of the within named John W. Timson at the Franklin County jail Columbus, Ohio and did advise him of his rights before answering any questions and did commit him to the Franklin County jail, Columbus, Ohio to await further action.

"U. S. MARSHAL'S RETURN

"John W. Timson appeared in federal court at 11:00 am Dec 29th, 1971 before Judge Joseph P. Kinneary and at this time purged himself of the contempt charge by returning the papers that he had removed from federal court clerks office on the 27th day of Dec 71. Subject was released from custody and no further court action."

[2]R. C. 2935.03, as in effect on December 28, 1971, read:

"A sheriff, deputy sheriff, marshal, deputy marshal, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.

"When there has been a violation or there is reasonable ground to believe there has been a violation of Section 2901.25, 2907.20, 2909.12,

a deputy sheriff shall arrest and detain a person found violating a law of Ohio or an ordinance of a municipal corporation until a warrant can be obtained.

Similarly, an arrest may be made under R. C. 2935.04[a] if the circumstances are such that the arresting officer knows that the person to be arrested has committed a felony, or that the officer has reasonable ground to believe that a felony has been committed.

Neither of those statutes furnished justification for the arrest of Timson under the facts of this case.

An arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make it at that time. To have probable cause, the arresting officer must have sufficient information, derived from a reasonably trustworthy source, to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused. *Brinegar* v. *United States* (1949), 338 U. S. 160; *Henry* v. *United States* (1959), 361 U. S. 98; *Beck* v. *Ohio* (1964), 379 U. S. 89; and *State* v. *Fultz* (1968), 13 Ohio St. 2d 79.

At the time of Timson's arrest without a warrant, Captain Rose had no information that Timson had com-

---

insofar [as] it relates to shooting at trains, motor vehicles, or vessels, or Section 2923.01 of the Revised Code, or of any ordinance of a municipal corporation which substantially incorporates any offense contained in such chapters or section, a sheriff, deputy sheriff, marshal, deputy marshal, or police officer may arrest without a warrant any person whom he has reasonable cause to believe is guilty of the violation, and detain him until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained." (Substantially amended by H. B. 511, effective January 1, 1974.)

[a]R. C. 2935.04 reads:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

mitted a felony, or that a felony had been committed. For those reasons, this arrest was constitutionally invalid.

## II.

Appellant additionally argues a novel, if not fanciful conception of contempt. Appellant urges that a ''holding in contempt in the federal court is within the power of that court and may result in imposition of a sentence of imprisonment exceeding one year, thereby substantiating its inclusion within the classification of a felony in Ohio law under R. C. Section 1.06. This is very evident from the language within 18 U. S. C. A. Section 401 (Br. 53) which speaks in terms of the 'discretion' (without limitation) vested within the federal courts. This also is substantiated by and comports with the opinions rendered in *Green* v. *United States, supra* [356 U. S. 165], and *United States* v. *Brown,* 247 F. 2d 332 (N. Y. C. A. 1957), aff'd 359 U. S. 41 * * * where the latter instance in a [*sic*] of 15 months was imposed pursuant to a lawful order of the court under authority of 18 U. S. C. A. Section 401(3) and by which a discretionary sentence would be upheld subject to Eighth Amendment sanctions.''

If we may extract from this farrago of argument, as implicit therein, the proposition of law that a charge of contempt in a federal court may be considered a felony under federal law or under Ohio law, its proponents have gravely misconceived the settled legal principles relevant to that division of jurisprudence.

While contempt may be an offense against the law and subject to appropriate punishment, certain it is that, since the foundation of our government, proceedings to punish such offenses have been regarded as *sui generis* and not criminal prosecutions within the Sixth Amendment to the United States Constitution, or common understanding. *Sui generis,* translated, means: of its own kind; peculiar to itself.

Consider a sampling of case authority:

A contempt proceeding is *sui generis. Blackmer* v. *United States* (1932), 284 U. S. 421; *Blankenburg* v. *Commonwealth* (1930), 272 Mass. 25, 172 N. E. 209.

Contempt proceedings are *sui generis,* being neither "civil actions" nor "criminal prosecutions" within ordinary meaning of terms. *Bowles* v. *United States* (C. A. 4, 1931), 50 F. 2d 848, 850.

Ohio lines up with the United States Supreme Court in holding that a contempt proceeding is a special proceeding. *Iron Moulders Union* v. *I. & E. Greenwald Co.* (1906), 4 N. P. (N. S.), 161, 164.

Once more, on this branch of appellant's argument, Timson had not committed a felony nor had a felony been committed, so the arrest without a warrant was illegal.

### III.

One more contention of appellant requires comment. In concluding its treatise on contempt, appellant hedges somewhat by declaring that "this argument is not meant to overlook the extremely significant language contained within the bench warrant itself." (See footnote 1.) The language referred to, conveying a special cryptic meaning to appellant, reads: "because of the contemptuous *removal* of such property from the files of this court and its appropriation to his own use * * *." (Emphasis added.)

Appellant's brief elaborates:

"While the bench warrant contains language in terms of contempt it also uses language of conversion and unlawful removal. In 18 U. S. C. A. Section 2071 (Br. 54), the following is found:

" 'Section 2071. Concealment, removal, or mutilation generally

" '(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined not more than $2,000 or imprisoned not more than three years, or both.'

"The act of the defendant in the instant case all too clearly falls within the provisions of this section. It is un-

130

disputed that John Timson willfully and unlawfully removed part of the record which was filed with the clerk of the District Court. This very act is subject to a penalty of a fine of $2,000 or imprisonment up to *three* years, or both.

"The acts described within Section 2071 are felonies as defined under Ohio law. There is merit in asserting that the defendant herein fulfilled each and every element necessary for a charge under this section. While he was not so charged, the act was chargeable. It is perhaps appropriate, in the hypothetical, to ask what Judge Kinneary would have done if the documents in question had been multilated, obliterated or destroyed. The statute quoted *ante* was available to cover any of those situations."

It is difficult to follow that reasoning, which gropes to find legal justification for the arrest, perhaps as a parapsychologist searches for spirits. We reject any such suggested conclusion as to a felony having been committed by Timson.

## IV.

Concerning the good faith of the deputy sheriff who made the warrantless arrest in this case, we feel some comment should be made. In that regard, we can do no better than adopt as our view the appropriate and seemly observations of Judge Holmes who wrote the majority opinion for the Court of Appeals:

"Although, upon first impression, this holding may appear to be in derogation of the performance of proper police investigative procedures, it is really not.

"This court is ever mindful of the difficult task of our police authorities, and in our decisions weigh every individual constitutional claim in the light of the voluminous responsibilities of our constabulary. However, the holding of this case merely reiterates the long-established law that an individual must ever be protected in his constitutional guarantees, and when a close question presents itself such must be answered in a manner to protect the individual, which individual, in a given instance, may be any one of us.

"Parenthetically, it should be noted at this juncture that although, in the strict sense of the motion to suppress the evidence, we have held herein that there was an absence of a showing of probable cause for the arrest of Mr. Timson, there is certainly good reason to believe that such arrest was made in good faith upon the supposition of the valid authority to do so.

"The arresting officers testified that they had been informed that there was a federal warrant outstanding against the defendant-appellant. It may be concluded that such officers had proceeded under the good faith belief, however legally erroneous, that the existence of such a warrant in and of itself established a valid basis upon which to arrest this appellant upon probable cause."

In conclusion, where an arrest without a warrant violates probable cause requirements under the Fourth and Fourteenth Amendments, evidence secured as an incident to such arrest should have been excluded from the trial. Defendant's motion to suppress the gun as evidence in his trial should have been granted. *Mapp* v. *Ohio* (1961), 367 U. S. 643, and *Whiteley* v. *Warden* (1971), 401 U. S. 560.

The judgment of the Court of Appeals is, accordingly, affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.