OPINION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Erie County Court of Common Pleas which, following a jury trial,
found appellant, Marie Homan, guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1), child endangering, in violation of R.C. 2919.22, and driving left of center, a minor misdemeanor, in violation of R.C. 4511.25. For the following reasons, we reverse the decision of the trial court.
Appellant was stopped on October 25, 1996 by Trooper Andrew R. Worcester, with the Ohio State Highway Patrol. As a result of this stop, appellant was cited with driving under the influence, in violation of R.C. 4511.19(A)(1), and for driving left of center, in violation of R.C. 4511.25. Subsequent to the evening of arrest, appellant was also charged with child endangering.
On November 4, 1996, appellant filed a speedy trial waiver. On November 19, 1996, appellant filed a "Notice of Appeal of Administrative License Suspension." On November 21, 1996, she filed a "Motion to Suppress Any and All Evidence." Appellant requested in her motion to suppress that any and all evidence gathered by the state as a result of the stop, arrest, and detention of appellant be suppressed because, among other arguments, there was no reasonable and articulable cause to stop appellant and/or no probable cause for arrest. Thereafter, on December 11, 1996, appellant was served with the additional charge of child endangering, a misdemeanor of the first degree, in violation of R.C. 2919.22.
After several requests for continuances, by both appellant and the state, the matter came for hearing on appellant's motion to suppress on February 21, 1997 and March 4, 1997. Generally, the facts testified to at the suppression hearing by Trooper Worcester were as follows. Worcester observed appellant cross the center line twice in a distance of approximately one-half mile. He pulled appellant over and detected a strong odor of alcoholic beverage and red and glassy eyes. When informed that she had been pulled over for driving left of center, appellant stated that it had occurred because she was speaking with her daughter who was in the vehicle with her. Worcester had appellant go sit in the patrol car.
According to Worcester, appellant admitted to having consumed three beers at home. Worcester administered a Horizontal Gaze Nystagmus ("HGN") test, the walk-and-turn test, the one-leg stand test, and a portable breathalyser test. Based on the results of these tests, Worcester arrested appellant and took her to the Norwalk post where the alcohol content of her breath was again checked.
During the suppression hearing, appellant's counsel cross-examined Worcester concerning his compliance with the National Highway Traffic Safety Administration manual ("the manual") during his administration of the HGN and field sobriety tests. Worcester testified that, regardless of the instructions in the manual, he consistently administered the tests in the same manner as he was instructed at the academy.
Lieutenant Lisa Taylor testified concerning the BAC DataMaster allegedly used to test the alcoholic content of appellant's breath. Taylor testified that, on or about October 21, 1996, there was a problem with Norwalk's machine. Taylor further testified that it was customary to send the machine in for repairs; however, Taylor could not establish when the machine was repaired or when it was returned. Taylor did testify that another post's machine would have been used in the absence of Norwalk's regular machine; however, there was no evidence presented concerning the operability of the alleged replacement machine.
Appellant argued in her post-hearing brief that Worcester lacked a reasonable articulable suspicion to stop her because the traffic violation was so minor it was insufficient to warrant a stop. Appellant also argued that Worcester lacked probable cause to arrest her because the HGN and field sobriety tests were unreliable, as they were not administered in accordance with the standardized methods of the Ohio State Highway Patrol. Because the tests used by Worcester as a basis for establishing probable cause were unreliable, appellant argued that the trooper lacked probable cause to arrest.
On May 2, 1997, the trial court filed its judgment entry regarding appellant's motion to suppress. The trial court held that the trooper had reasonable articulable suspicion for the stop because the trooper testified that appellant crossed the center line two times by a distance of two feet. The trial court also held that the trooper had probable cause to arrest appellant because he detected a strong odor of alcohol about her person, appellant's eyes were red and glassy, and she admitted to the consumption of alcohol. With respect to the field sobriety tests, the court stated as follows:
 "In addition, [appellant] did not perform adequately on several field sobriety tests. While the Court acknowledges the issues raised by defense counsel concerning the Troopers [sic] failure to strictly comply with the instructional guidelines for the various field sobriety tests, the Court nevertheless finds that, taken as a whole, the field sobriety tests indicated sufficient impairment to support a finding of probable cause for arrest."
The trial court then proceeded to suppress the results of the BAC DataMaster because a record of failed calibrations was not kept, this being a violation of the Department of Health regulations and the Ohio Administrative Code.
On the morning of trial, appellant filed a motion to dismiss the child endangering charge for lack of speedy trial. Specifically, appellant alleged that over two hundred days elapsed from the time the complaint for endangering the welfare of a child had been filed, before appellant was brought to trial. However, appellant asserted that the time period was even longer because the days actually needed to be calculated from the date of the original complaint, not just from the date of the child endangering complaint. Appellant asserted that the speedy trial waiver could not apply to the child endangering charge because it was executed thirty-nine days before the complaint for this charge was filed. Additionally, appellant asserted that she did not delay the proceedings by the filing of her motion to suppress because that motion was also filed prior to the child endangering complaint and, therefore, was not specific to that charge.
The trial court denied appellant's motion to dismiss finding that the motion to suppress applied to the child endangering charge. The court reasoned that if appellant had been successful with her motion, it would have also eliminated the child endangering charge. As such, because appellant's motion caused a delay, the speedy trial time was tolled as to the child endangering charge.
Thereafter, appellant entered a plea of no contest to the child endangering charge. As such, the jury was not informed of the presence of appellant's daughter in the vehicle at the time of the stop.
The matter came for jury trial on July 17, 1997. Trooper Worcester's testimony was similar to that at the suppression hearing. Worcester testified that he pulled appellant over after having observed her cross a solid yellow double center line twice, by approximately two feet each time, during a span of approximately one-half mile. Worcester testified that he approached appellant's vehicle and asked for her driver's license and informed her why he had stopped her. At that time, he smelled a strong odor of alcoholic beverage on her breath. Worcester testified that he also noticed that she had red and glassy eyes. Worcester then instructed appellant to bring her vehicle registration and proof of insurance to the patrol car. Worcester returned to his patrol car and appellant followed. While in the patrol car, Worcester again noticed a strong odor of an alcoholic beverage on appellant's breath and her red and glassy eyes. While in the patrol car, Worcester administered the HGN test, which he was certified to give. Worcester testified that appellant lacked "smooth pursuit," that distinct nystagmus was present in both eyes at maximum deviation, and that appellant had the onset of nystagmus prior to forty-five degrees.
With respect to the walk-and-turn test Worcester administered, he testified that he had appellant perform the test on the white edge line at the side of the road, on the paved surface, in front of his patrol car and behind her vehicle. He then testified concerning the instructions he gave to appellant prior to her examination. Worcester told her to watch him while he demonstrated the test and stated that he told her that with her arms down to her side, she should touch heel to toe, count to nine out loud, then pivot, then count back to nine, touching heel to toe. Worcester testified that appellant performed the test, but failed to touch heel to toe twice, raised her arms for balance a couple of times over six inches, and stepped off the line once. However, she did turn correctly and take the correct number of steps.
The final field sobriety test Worcester administered was the one-leg stand test. Worcester testified that he instructed her to raise one leg four to six inches off the ground, point her toe, look down at her toe, and count to thirty with her arms down to her side. He then demonstrated. Worcester testified that she did not sway while performing the test; however, she raised her arms about six inches at some point during the test for balance. Worcester also testified that she put her foot down on the third count and hopped twice during the test to maintain her balance.
Worcester further testified that appellant admitted to consuming three beers. Thereafter, Worcester placed appellant under arrest and issued her citations at 8:42 p.m.
On cross-examination, Worcester testified that, besides the crossing of the center line, he noticed no other lane transgressions, erratic driving, or speeding. Worcester also testified that appellant pulled her car over in a safe manner; produced her license in a normal manner; was stable on her feet upon walking to the patrol car; spoke clearly without mush mouth or slurred speech; and was not belligerent.
With respect to the HGN test, Worcester testified that he made two passes with the stimulus, i.e., the pen, with each eye. He further testified that it took one to two second to pass over each eye. Appellant's counsel had Worcester read from the National Highway Traffic Administration manual, from which Worcester was trained, which stated that the tests are only valid when administered in the prescribed standardized manner. The manual also stated, "If any one of the standardized test elements is changed, the validity is compromised." Worcester agreed that the tests cannot be relied upon if not done in the manner he was trained. According to the manual, when looking for nystagmus at maximum deviation, the examiner is to hold the eye at maximum deviation for approximately four seconds and observe the eye for nystagmus. Worcester admitted that he did not conduct the test in this manner and, therefore, his results are potentially unreliable.
Worcester testified that the policy of the Ohio State Patrol regarding walk-and-turn tests is found in the Ohio State Patrol manual ("patrol manual"). As a patrol officer, Worcester testified that he was directed to follow that policy. According to the patrol manual, testing for the walk-and-turn test "should be conducted on a flat level surface if practicable and will not be conducted between stopped vehicles." Worcester further testified that he conducted the examination between the cars, but that was the safest location and no other location was practicable. Regarding the instructions given to appellant, Worcester testified that he did not conduct the test exactly as the manual prescribed. He did not have her stand on the line, while he gave instructions, with her right foot in front of her left. He also did not instruct her to turn to the left after completing her nine steps, contrary to the manual's instructions. Instead, Worcester testified that he gave her the option of turning either direction. With respect to the levelness of the surface, Worcester testified that only areas of the road were level and that there was gravel on the paved portion of the berm. Worcester was finally asked, "You didn't do the tests the way they were supposed to be done, did you?" Worcester responded, "Not the way the manual states."
Trooper Christopher Midkiff, also with the State Highway Patrol, testified as well. Midkiff testified concerning the manner in which he typically conducted field sobriety tests. With respect to the walk-and-turn test, Midkiff testified that he generally has a suspect perform the test behind his patrol car, facing away from the lights, on a flat surface that is free of objects that may interfere with the suspect's performance. Midkiff also testified that if there is some gravel on the road he clears it off if it is just a few pieces, or he moves to another area. Midkiff, however, also gives suspects a choice to turn either direction during the test.
On cross-examination, Midkiff testified that, although he typically only makes two passes per eye during the HGN test, he does hold the stimulus for four or more seconds at maximum deviation to check for distinct nystagmus. Midkiff also testified that he held it at maximum deviation for that period of time because the test does not work if the stimulus is just moved out and then back. Midkiff further testified that nystagmus at maximum deviation could not be detected if the stimulus is just moved out and back without being held at maximum deviation. With respect to the walk-and-turn test, Midkiff testified that he does not require the suspect to stand on the line with one foot in front of the other during the instruction phase, even though the manual specifies that he should. Midkiff also does not have the suspect walk the white line on the edge of the road because the cars driving by can produce wind concussion that can blow the suspect a little bit, and because he does not want them to get hit.
The state concluded its case at this point and appellant moved for a directed verdict, which was overruled by the trial court. Appellant's sole witness was then presented.
Carol Hoskins testified that she was with appellant on the day of the arrest because Hoskins had just been served with divorce papers. Hoskins testified that she and appellant split a six-pack of Miller Lite that Hoskins brought over. According to Hoskins, she and appellant both had one beer at 1:30 p.m., 3:30 p.m., and around 5:30 or 6:00 p.m. Hoskins also testified that appellant left her house a little after 8:00 p.m. At no time did appellant appear intoxicated to Hoskins or have a smell of alcoholic beverage about her person.
The jury returned a verdict of guilty of the charge of operating a motor vehicle while under the influence of alcohol. Thereafter, the trial court found her guilty of the charge of driving left of center. The trial court fined appellant $20 and costs on the conviction of driving left of center; as to the driving under the influence of alcohol conviction, the trial court sentenced appellant to a fine of $600, plus costs, with $300 suspended, sixty days in jail, with fifty-five days suspended, and suspended her license for one year; and as to the child endangering conviction, appellant was sentenced to a fine of $400, plus costs, $200 suspended, and sixty days in jail, fifty-five of which was suspended, with the jail time to be served concurrently.
Appellant timely appealed her conviction and sentence, and raises the following assignments of error:
 "I. THE TRIAL COURT VIOLATED MS. HOMAN'S RIGHT TO A SPEEDY TRIAL WHEN IT BROUGHT HER TO TRIAL ON THE CHARGE OF CHILD ENDANGERING NEARLY EIGHT MONTHS AFTER HER ARREST.
 "II. THE TRIAL COURT ERRED WHEN IN FAILED TO SUPPRESS ALL EVIDENCE OBTAINED BY THE TROOPER WHEN HE LACKED PROBABLE CAUSE TO ARREST MS. HOMAN FOR DRIVING UNDER THE INFLUENCE.
 "III. THERE IS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE CONVICTION OF MS. HOMAN ON THE CHARGE OF DRIVING WHILE UNDER THE INFLUENCE OF ALCOHOL."
 Assignment of Error I
In her first assignment of error, appellant argues that the trial court violated her right to speedy trial when it brought her to trial on the charge of child endangering nearly eight months after her arrest. Appellant asserts that State v. Adams
(1989), 43 Ohio St.3d 67, is dispositive of her argument.
In Adams, the defendant was initially charged with having a concentration of ten-hundredths of one gram or more by weight of alcohol per two-hundred-ten liters of his breath in violation of R.C. 4511.19(A)(3). At the time, Adams waived the time limitation for trial, but the state eventually decided tonolle this initial charge. Subsequently, the state filed a second complaint against defendant, charging him with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1). The Ohio Supreme Court applied the same ninety-day time period to both charges and held, "When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Adams at syllabus. However, when the additional charges arise out of a different set of facts, a new time period begins from the time the second indictment was returned:
 "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment."
State v. Baker (1997), 78 Ohio St.3d 108, syllabus.
The right to a speedy trial is guaranteed by theSixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution. The individual states are obligated under the Fourteenth Amendment to afford a person accused of a crime such a right. Klopfer v. North Carolina (1967),386 U.S. 213, 223.
A violation of R.C. 2919.22(C)(1) is a misdemeanor of the first degree. R.C. 2919.22(E)(5). Pursuant to R.C.2945.71(B)(2), a person charged with a misdemeanor of the first degree shall be brought to trial within ninety days after his arrest or the service of summons. Upon motion made prior to trial, a person charged with an offense shall be discharged if he is not brought to trial within the statutory time limit. R.C.2945.73(B). The time within which an accused must be brought to trial may be extended by one of the factors listed in R.C.2945.72, including:
 "(D) Any period of delay occasioned by the neglect or improper act of the accused;
 "(E) Any period of delay necessitated by reason of * * * motion, proceeding, or action made or instituted by the accused; * * *
 "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."
Issues to consider when determining whether a defendant was deprived of his speedy trial rights are: length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. State v. O'Brien (1987), 34 Ohio St.3d 7,10, citing, Barker v. Wingo (1972), 407 U.S. 514, 530.
Appellant was arrested on October 25, 1996, filed a waiver of time on November 4, 1996, and then was charged with child endangering on December 11, 1996, under a different case number. All the charges arose out of the incident/traffic stop on October 25, 1996.
We agree with appellant that the waiver executed by appellant on November 4, 1996, does not apply to the child endangering charge filed on December 11, 1996. See Adams, 43 Ohio St. 3d at syllabus. As such, we must consider whether the time requirement was extended due to any of the reasons listed in R.C.2945.72.
The state argues that the time to bring appellant to trial was extended because of appellant's motion to suppress. The state reasons that because the motion sought to suppress "any and all evidence," if appellant had prevailed, then all the charges would have been dismissed, including child endangering. The state further argues that "appellant was never given the impression, nor was it the intention of the State to prosecute appellant's charges separately." As such, the state asserts that "it was reasonable for the trial court to consider appellant's motion to suppress as tolling the time to all charges." We disagree.
The motion to suppress was filed prior to the filing of the child endangering charge. As such, we find that the motion did not concern this subsequent charge and only involved the charges of driving under the influence and driving left of center. Despite the state's assertion that there was never any indication that the charges would be tried separately, the fact remains that they could have been, because each required proof of an additional fact that the other did not. See State v. Jacot (1993), 97 Ohio App.3d 415,417, citing, State v. Fischer (1984), 20 Ohio App.3d 50,54. See, also, Adams, supra at 69. Accordingly, we find that appellant's motion to suppress did not extend the time for bringing appellant to trial on the child endangering charge.
Therefore, we must next examine whether there were any other delays necessitated by appellant that would have extended the time for trial on the child endangering charge. As stated above, the ninety day time period began to run on the child endangering charge on October 25, 1996. Appellant was not brought to trial on the charge until July 17, 1997. The record reveals that appellant requested a few continuances during the pendency of the case. However, even by including the time for these continuances, we find that appellant was still brought to trial beyond the statutory time requirements with respect to the child endangering charge. Accordingly, we find appellant's first assignment of error well-taken.
 Assignment of Error II
Appellant argues in her second assignment of error that the trooper lacked probable cause to arrest her. Specifically, appellant argues that Trooper Worcester did not administer the field sobriety tests in accordance with the standardized methods set forth in the manual, out of which he was trained. As such, appellant asserts that the results of the field sobriety tests were invalid and unreliable. Without the results of the field sobriety tests, appellant argues that Worcester had no basis upon which to arrest her.
We agree that the results of the HGN and walk-and-turn test should not have been relied on as a basis to arrest appellant because they were not performed in accordance with standardized methods and procedures. According to the manual, if any one of the standardized test elements is changed, then the validity of the test is compromised. Worcester admitted that he did not perform the tests in the standardized method set forth in the manual. Worcester attempted to justify the alterations he made to the tests by stating that he always did them in such a manner and that he was orally instructed to perform them in that manner. We, however, find that, based on the manual itself, these tests must be done in the standardized manner prescribed, otherwise the results are invalid. By allowing the tests to be performed in various manners would create inconsistency across the state and would strip the tests of their reliability.
Nevertheless, even with the suppression of the HGN and walk-and-turn tests, we must determine if sufficient evidence remained upon which Trooper Worcester could have relied to arrest appellant. In deciding whether probable cause exists for an arrest, a court must determine if, at the moment of arrest, the police officer had knowledge of facts and circumstances, grounded in reasonably trustworthy information, to warrant a belief by a prudent person that an offense has been committed by the person to be arrested. Beck v. Ohio (1964), 379 U.S. 89, 91; State v.Timson (1974), 38 Ohio St.2d 122, paragraph one of the syllabus. To determine whether a police officer had reasonable grounds to arrest for a violation of R.C. 4511.19, a "totality of the circumstances" test should be employed. Atwell v. State, (1973),35 Ohio App.2d 221, 226-227. See, also, State v. McCaig (1988),51 Ohio App.3d 94. The test should include not only the actions of the defendant when driving but also the actions of the driver immediately after he has discontinued driving. Atwell,35 Ohio App.2d at 226-227.
After excluding the HGN and walk-and-turn tests, the remaining evidence was that Worcester observed appellant's vehicle cross a double solid yellow centerline twice, by approximately two feet each time, in a span of one-half mile; that Worcester detected a strong odor of alcohol on appellant's breath and observed that appellant's eyes were red and glassy; that appellant admitted to having consumed three beers; and that appellant failed the one-leg stand test by placing her foot on the ground once, hopping twice, and raising her arms by approximately six inches during some portion of the examination. Based on the remaining evidence, we find that Worcester had knowledge of facts and circumstances, grounded in reasonably trustworthy information, to warrant a belief appellant was driving under the influence of alcohol. Accordingly, although we find that the results of the HGN and the walk-and-turn test were untrustworthy and should not have been relied upon, we conclude that Worcester did have probable cause to arrest appellant. See State v. Carleton
(Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, (probable cause to arrest found to exist where, although the results of the HGN and the breathalyser were suppressed, the officer observed the suspect's car cross the right edge line twice, detected a strong odor of alcohol and bloodshot yes, and suspect failed the walk-and-turn and one leg stand tests). We therefore find appellant's second assignment of error not well-taken.
 Assignment of Error III
In her third assignment of error, appellant argues that there was insufficient evidence in the record to support the conviction of driving while under the influence of alcohol. Appellant asserts that because the evidence of the field sobriety tests should have been excluded, without such information the state failed to establish that appellant was driving while under the influence of alcohol. Additionally, appellant asserts that, based on the evidence presented in her case in chief, the trier of fact was incorrect in finding her guilty beyond a reasonable doubt. Although not specifically stated by appellant, she actually makes both an insufficiency argument and manifest weight argument.
Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Whereas, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. at 387. The appellate court,
 "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
There was sufficient evidence going to the element of "under the influence of alcohol," see Jenks, supra; however, we find that appellant was prejudiced by the presentation of the results of the HGN test and the walk-and-turn test. This improperly admitted evidence caused the jury to lose its way and created a manifest miscarriage of justice. See Thompkins, supra. We therefore find appellant's third assignment of error well-taken.
 Conclusion
On consideration whereof, this court finds that appellant was prejudiced from having a fair trial and the judgment of the Erie County Court of Common Pleas is reversed as to the charges of child endangering and driving while under the influence of alcohol. This matter is therefore remanded to the trial court for a new trial, in accordance with this opinion, on the charge of driving under the influence of alcohol. Court costs assessed to appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., JUDGE
MELVIN L. Resnick, J., JUDGE
Richard W. Knepper, J., JUDGE
CONCUR.