Appellant, Quinton Byrne, appeals from a judgment of the Geauga County Court of Common Pleas, Juvenile Division, in which he was adjudged a delinquent premised upon a complaint charging him with robbery, in violation of R.C. 2911.02(A)(2), a second degree felony if committed by an adult.
On October 11, 1997, as Emma Miller, a sixty-five-year-old Amish woman, was walking to her buggy at the Sparkle Market parking lot, a young male attempted to steal her purse. When the juvenile tugged on the strap, which was wrapped around her arm, Mrs. Miller fell to the ground and scraped her finger. Unable to pull the purse away from Mrs. Miller, the juvenile fled on foot across the parking lot and up a grassy embankment, in the direction of a school building.
At approximately 2:45 p.m., the Middlefield Police Department received two separate calls reporting the incident, and Officer Michael Malliski was dispatched by the Middlefield Police Department to the Sparkle Market parking lot. Upon arriving at the scene, the officer located Mrs. Miller and she described the incident but told the officer that she could not give a description of her assailant. While talking to Mrs. Miller, Officer Malliski was approached by three persons offering themselves as witnesses to the incident. Each of the witnesses told the officer that they had seen a struggle between a young male and Mrs. Miller and described the assailant as a young man with brown hair, approximately thirteen or fourteen years old, wearing a dark green T-shirt and dark pants. Two of the witnesses had chased the boy up the embankment toward the school buildings but were unable to catch him, and none of them had seen his face. Officer Malliski then asked the witnesses to go to the police station to make statements.
Officer Malliski informed the entire Middlefield Police force through dispatch to look for a young white male with dark hair, thirteen to fourteen years old wearing a green T-shirt and dark pants in the vicinity of the Middlefield school complex. Approximately twenty to twenty-five minutes after the incident and almost immediately after he began his search, Officer Parker, while driving his police cruiser, observed appellant. He was walking with a friend behind the library which is situated next to the portable school buildings and between the junior high and the elementary school. Officer Parker then radioed Officer Tubberville to tell him that he observed an individual matching the suspect and asked Officer Tubberville to meet him behind the library. The officers approached appellant and told him that an Amish woman had been attacked in the Sparkle Market parking lot. After appellant told the officers that he did not know anything about it, Officer Parker told appellant that he needed to talk to him and that he wanted to talk at the police station because he had to notify appellant's parents. Officer Tubberville drove appellant to the station in his cruiser.
As appellant was getting out of the police cruiser, one of the witnesses, who was entering the parking lot of the police station, saw appellant and identified him as the offender. As appellant was standing in front of the police cruiser next to Officer Tubberville, the other two witnesses were asked to view him through a large window facing the parking lot. Both witnesses identified appellant as the juvenile who had attempted to steal Mrs. Miller's purse. Mrs. Miller was also asked if she could identify appellant, but she was initially unable to identify him; however, when she viewed appellant once more, she told the police that he looked like the individual who had knocked her down.
Appellant was taken to an interview room and was advised of his Miranda rights. When appellant's father, Alan Byrne arrived, Officer Parker told him that the police had three eyewitnesses who had seen his son commit the crime and that he was positive that appellant was the perpetrator. After appellant and his father signed a waiver form, appellant made a statement denying involvement in the attempted robbery of Mrs. Miller. Before appellant was released, Officer Tubberville had appellant put on clothing that his father had brought to the police station so that the clothing that appellant was wearing when arrested could be held as evidence. A few hours after appellant's release, he returned with his father to make another statement. Appellant was re-Mirandized, and after signing another waiver, confessed to an attempted theft of Mrs. Miller's purse.
Appellant was subsequently charged with robbery, a violation of R.C. 2911.02(A)(2), a felony of the second degree. On February 18, 1998, appellant filed a motion to suppress all evidence and statements taken on October 11, 1997, alleging that appellant was arrested without probable cause. The same day, the trial court held a hearing on appellant's motion to suppress. The trial court denied the motion, and the case proceeded to an adjudicatory hearing. After considering the evidence presented, the trial court found the complaint to be true. From this judgment, appellant assigns the following errors:
 "[1.] The trial court erred to the prejudice of the Appellant by denying his motion to suppress requesting the trial court to deny the admittance of illegally, unlawfully and/or unconstitutionally-obtained evidence.
 "[2.] The trial court erred in finding appellant delinquent against the manifest weight of the evidence as the prosecution failed to prove each and every element of Ohio Revised Code Section 2911.02(a)(2) beyond a reasonable doubt.
 "[3.] The trial court erred in finding appellant delinquent as the evidence presented was not sufficient to support a conviction, since, even with the evidence construed in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of Ohio Revised Code 2911.02(a)(2) proven beyond a reasonable doubt."
In his first assignment of error, appellant alleges that the trial court erred by denying his motion to suppress. Appellant contends that because he was arrested without probable cause, all evidence gathered after the illegal arrest should have been suppressed.
"An arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make the arrest at that time." State v. Timson (1974), 38 Ohio St.2d 122,311 N.E.2d 16, paragraph one of the syllabus. Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense. Beck v. Ohio (1964), 379 U.S. 89, 90, 85 S.Ct. 223,225; State v. Fultz (1969), 13 Ohio St.2d 79, 234 N.E.2d 593, paragraph one of the syllabus.
When considering a motion to suppress, the trial court assumes the role of trier of fact and, accordingly, is in the best position to weigh the evidence and evaluate the credibility of the witnesses. State v. DePew (1988), 38 Ohio St.3d 275, 277,528 N.E.2d 542. As an appellate court, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594, 621 N.E.2d 726. Accepting those facts as true, however, we must determine whether the facts presented at the suppression hearing support the legal conclusion reached by the trial court.
At the suppression hearing, Officer Parker testified that he was told to look in the vicinity of the schools for a juvenile with brown hair wearing a green shirt and dark pants. At approximately 3:10, while on East High Street, in the area of the library and a Dairy Mart, Officer Parker observed two white male juveniles walking between the junior high and the elementary school. Officer Parker testified that when he pulled his cruiser next to the boys, they made no attempt to run or evade him. He told appellant and his friend that an attempted robbery had occurred in the parking lot of the Sparkle Market and that appellant matched the description. Appellant told Officer Parker that he did not know anything about it. Officer Parker testified that he responded, "Well, for right now, you fit the description and we will need to talk to you." He then told appellant that he wanted to talk to him at the police station because he had to notify appellant's parents. Officer Tubberville proceeded to drive appellant to the Middlefield Police station.
Although the State argued that appellant was not arrested at the time he entered the police cruiser to be taken to the police station, the trial court determined that the appellant was placed under arrest at that time and "taken into custody by the officer and transported a short distance to the Middlefield Police Department." Based upon the evidence presented, the trial court concluded that the officers involved had probable cause to believe that appellant had committed a crime because appellant matched the description of the suspect and was found in relatively close proximity in time and place to where the suspect had last been seen.
We do not agree with the trial court's conclusion that these facts demonstrate that the officers possessed probable cause to arrest appellant. Probable cause "is a reasonable ground for belief of guilt." Brinegar v. United States (1949), 338 U.S. 160,175, 69 S.Ct. 1302, 1310. We must dispute the trial court's conclusion that appellant's presence on school grounds twenty-five minutes after the incident provided the officers a reasonable ground for the belief that he had committed a crime. Two witnesses to the incident ran after Mrs. Miller's assailant and looked around the school buildings without success. Then, twenty-five minutes later, the police bring in a boy from the same location. If two people, one of whom is an off-duty police officer, cannot find the attacker within seconds of his flight, appellant's presence at the same location approximately twenty-five minutes later, does not give the officers probable cause to believe that he committed the offense against Mrs. Miller.
That appellant matched the description of the suspect and was found in the vicinity of the schools merely constitutes reasonable suspicion justifying the officers' decision to stop and investigate. When the officers' conversation with appellant failed to reveal any information suggesting that he was involved in the incident, further investigation was required prior to arrest. At the time appellant was arrested, the only evidence linking him to the crime was that he was wearing a bluish-green T-shirt and dark pants and walking on school grounds. It is not so unlikely that a fourteen-year old boy would be walking near a school on Saturday and the description of the suspect's clothing was not so distinctive that the officers could develop a reasonable ground for belief of appellant's guilt based upon those facts alone.
We have held that "police officers pursuing a fleeing criminal have probable cause to arrest a person matching the description of the suspect who is found in a place where the search is likely to produce the culprit." State v. Washington
(Jan. 10, 1997), Lake App. No. 95-L-128, unreported, citing Statev. Slipcevic (Dec. 8, 1995), Ashtabula App. No. 94-A-0061, unreported and State v. Ford (Mar. 24, 1995), Ashtabula App. No. 94-A-0023. The above cited cases are distinguishable from the case sub judice because the police in those cases found additional evidence besides general body and clothing descriptions to tie the suspect to the crimes being investigated. Such additional evidence included: acts of flight or attempts to hide from the police; suspicious behavior; false stories; cuts and bruises; and tracks made by suspect leading away from the scene of the crime. In the instant case, the police found no additional evidence linking appellant to the crime. When the police approached appellant, he was casually walking with a friend and eating a candy bar; he was not nervous and did not act in a suspicious manner.
The facts in this case are analagous to the facts of In theMatter of: Colton Mason, Alleged Delinquent Minor (May 21, 1991), Franklin App. No. 90AP-217, unreported. In that case, a police officer heard a dispatcher's description of a robbery suspect, and when the officer found an individual matching that description in the vicinity of the crime scene, the officer arrested him. The Tenth Appellate District stated:
 "Under the circumstances here, Officer Dishman had no probable cause for an arrest of appellant prior to appellant's entering Schottenstein's Department Store. He had ample reason to stop appellant and investigate further, but no probable cause to make an arrest. At this point, appellant, at most, was a suspect tied to the crime only because he was in the vicinity, was wearing a red jacket and was accompanied by another young black wearing a white jacket. The fact that subsequently acquired information verified that appellant and his friend were the two involved in the alleged robbery does not retroactively create probable cause for an arrest."
We agree with the analysis of the Tenth Appellate District. In the instant case, the trial court erred by concluding that the officers had probable cause to arrest appellant.
"Where an arrest without a warrant violates probable cause requirements under the Fourth and Fourteenth Amendments to the United States Constitution, evidence secured as an incident to such arrest should have been excluded from the trial." Timson,supra, at paragraph two of the syllabus. Accordingly, the clothing taken from appellant should have been excluded from the adjudicatory hearing. Because appellant was illegally arrested and brought before the witnesses for identification, testimony concerning the pretrial identifications that occurred at the police station should have been excluded from the adjudicatory hearing as the fruit of a Fourth Amendment violation. UnitedStates v. Crews (1980), 445 U.S. 463, 100 S.Ct 1244.
The in-court identifications of appellant made by the eyewitnesses to the crime should also have been excluded from the adjudicatory hearing. In Crews, the United States Supreme Court held that an in-court identification was admissible because it fell under the independent source exception to the exclusionary rule based upon the witnesses' ability to identify the defendant on the basis of the images formed in their minds at the time they were robbed. The facts of this case are distinguishable fromCrews because the witnesses in this case did not form an independent recollection of appellant apart from the identification made at the police station. Although the witnesses described the perpetrator's size, hair color, and build, they did not see his face and their identication of appellant at the police station was based largely on the clothing that he was wearing; thus, the witnesses would not have been able to identify appellant in court but for the improper pretrial identification.
The trial court should have suppressed the statements made by appellant, including his confession. A confession made after an illegal arrest is subject to the exclusionary rule if it "has been come at by exploitation of that illegality * * *." Wong Sun v.United States (1963), 371 U.S. 471, 488, 83 S.Ct. 407. If the confession is so intimately bound up with the conditions and circumstances of an illegal arrest that it is not an act of a wholly free will, the confession is not admissible. Id. Factors to be considered in determining whether a confession is the product of free will include the "temporal proximity" of theFourth Amendment violation and the confession, "intervening circumstances," and the "purpose and flagrancy of the official misconduct." Brown v. Illinois (1975), 422 U.S. 590, 603-604,95 S.Ct. 2254, 2262. In the instant case, appellant's confession cannot be said to be an act of free will because of the circumstances surrounding his arrest and subsequent confession. After appellant made a statement denying his involvement in the incident, Officer Parker privately spoke to appellant's father and told him that three witnesses saw appellant attempt to steal Mrs. Miller's purse and that he was sure that appellant committed the crime. Officer Parker also told appellant's father about the severe consequences associated with making a false statement to the police. Less than five hours after appellant was illegally arrested, he returned to the police station to confess to the crime. Appellant's mother testified that when she got home from work, her husband was "out of control," yelling, swearing, and throwing things, and forced appellant into confessing because of what Officer Parker had told him. After the police confronted appellant's father with the inadmissible evidence, he pressured appellant to make another statement. Because of the close temporal proximity between the illegal arrest and the confession, appellant's confession cannot be said to be an act of free will. See Wong Sun, supra, at 488.
We are not saying that appellant's confession was involuntary in the Fifth Amendment sense because it was coerced by the State. The Fifth Amendment protects against involuntary confessions by protecting suspects from coercive police conduct aimed at inducing confessions. See Spano v. New York (1959), 360 U.S. 315,79 S.Ct. 1202. We recognize that the pressure placed upon appellant by his father cannot be attributed to the State. As stated by the United States Supreme Court, the Fourth and Fifth Amendments involve different interests and serve different policies. Brown,supra. In the instant case, appellant's confession should have been suppressed because its admission at his adjudicatory hearing violated his Fourth Amendment rights. Appellant's confession was so intimately tied to his illegal arrest that we cannot say that it was an act of free will.
For the foregoing reasons, the trial court erred by denying appellant's motion to suppress. Appellant's first assignment of error has merit.
We do not need to address appellant's second and third assignments of error because they are rendered moot based upon the conclusion that the evidence against appellant should have been excluded from appellant's adjudicatory hearing.
For the foregoing reasons, the judgment of the Geagua County Court of Common Pleas, Juvenile Division, is reversed and judgment is entered for the appellant.
 _______________________ JUDGE ROBERT A. NADER
FORD, P.J.,
O'NEILL, J.,
concur.