OPINION
On August 18, 2000, Trooper Michael Maddock of the Ohio State Highway Patrol responded to an automobile accident in Perry Township, Ohio. Appellant, Kent Heavener, was a driver of one of the vehicles. Based upon his observations, Trooper Maddock decided to administer three field sobriety tests to appellant, the horizontal gaze nystagmus (HGN) test, the walk and turn test and the one-leg stand test. Thereafter, Trooper Maddock cited appellant for driving under the influence in violation of R.C. 4511.19(A)(1).
On September 29, 2000, appellant filed a motion to suppress claiming the field sobriety tests had not been administered in compliance with standardized testing procedures. A hearing was held on October 2, 2000. By journal entry filed same date, the trial court suppressed the results of the walk and turn test and found appellant could not physically do the one-leg stand test due to a medical condition. The trial court denied the motion as it related to the HGN test.
A jury trial commenced on November 2, 2000. The jury found appellant guilty as charged. By journal entry filed November 3, 2000, the trial court sentenced appellant to ninety days in jail, suspended in lieu of probation and treatment.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT'S ADMISSION OF TESTIMONY REGARDING THE PORTABLE BREATH TEST (PBT) WAS AN ERROR OF LAW. II THE TRIAL COURT'S DENIAL OF THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WAS AN ERROR OF LAW. III THE TRIAL COURT DENIED THE DEFENDANT HIS RIGHT TO CONFRONT WITNESSES AND HIS RIGHT TO DUE PROCESS BY NOT ALLOWING ANY CROSS-EXAMINATION REGARDING THE CONDUCT OF THE FIELD SOBRIETY TESTS. IV THE TRIAL COURT ERRED IN PERMITTING A JUROR TO ASK A QUESTION ABOUT THE DEFENDANT'S PRIOR RECORD. I
Appellant claims the trial court erred in permitting testimony concerning the results of a portable breath test (PBT). We agree.
Neither party questioned Trooper Maddock on the PBT. The trial courtsua sponte asked the following questions:
 THE COURT: You mentioned a trooper Rike arriving at the scene with a portable breath test?
Yes.
 THE COURT: Ah was the defendant offered a portable breath test?
* * *
 THE COURT: Yeah. Did Trooper Rike give the defendant a portable breath test?
 Ah actually he gave the ah portable breath test or ah preliminary breath testing machine to me and I did the test. That's when I was done with the field sobriety test. I offered that to him and he said that he would take it.
 THE COURT: So he did take that ah what you call it PBT?
 A PBT right. It's ah . . . it's a little box that has a digital readout. You blow into a hollow tube and it measures the result.
 THE COURT: And to the best of your opinion did he pass or fail that test?
Ah he failed that test.
T. at 127-128.
During the jury charge, the trial court specifically instructed the jury to disregard the testimony as follows:
 There was ah questions asked about a portable breath test and that shall be excluded because that is not an evidentiary machine nor was it properly calibrated nor are they calibrated but it's just one part of the totality of circumstances which led the officer to file the charge.
T. at 185.
We have previously held the results of a PBT are not admissible because the Ohio Department of Health no longer recognizes the test. See, Ohio Adm. Code 3701-53-02; State v. Shumar (January 24, 2000), Stark App. Nos. 1999CA0081 1999CA0203, unreported. Therefore, the cautionary instruction was in error because although the trial court excluded the testimony, the trial court instructed that the test could be considered as "one part of the totality of circumstances."
Based upon our decision in Shumar and the lack of a proper exclusionary instruction, this assignment of error is granted.
 II
Appellant claims the trial court erred in denying his motion to suppress the results of the HGN test and the one-leg stand test.[1] We disagree.
The crux of appellant's argument is that Trooper Maddock's testimony as to how the HGN tests was administered proved that it did not strictly comply with the rules as promulgated by the Ohio Department of Health. In addition, appellant argues the results of the one-leg stand test should have been suppressed because of his medical condition, "brittle bone disease."
Appellant's motion to suppress argued the tests were not properly administered and therefore they should not be used as evidence at trial. In support of this motion, then and now, appellant cites State v. Homan
(2000), 89 Ohio St.3d 421, paragraph one of the syllabus, which states "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures."[2] Despite the written motion, defense counsel at the hearing argued for suppression of the tests in light of probable cause to arrest. October 2, 2000 T. at 4. We will limit our review under the standard of strict compliance to probable cause to arrest.
At the suppression hearing, Trooper Maddock testified appellant caused a two vehicle accident, had bloodshot eyes and a strong odor of alcohol about his person, had urinated on himself and had admitted to drinking prior to the accident. October 2, 2000 T. at 7-8, 13, 15-16.
The Holman court at 427 discussed probable cause as follows:
 In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145; State v. Timson (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 143, 311 N.E.2d 16, 20. In making this determination, we will examine the "totality" of facts and circumstances surrounding the arrest. See State v. Miller (1997), 117 Ohio App.3d 750, 761, 691 N.E.2d 703, 710; State v. Brandenburg (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906, 908.
Clearly, even if field sobriety tests had not been administered, there was probable cause to arrest appellant for driving under the influence. The trial court found probable cause to arrest based upon the totality of the circumstances. The trial court found the HGN test was administered in strict compliance with the regulations and appellant was physically unable to perform the one-leg stand test.
In conducting a HGN test, the DWI Detection and Standardized Field Sobriety Testing Manual published by the National Transportation Safety Administration provides the following checklist:
ADMINISTRATIVE PROCEDURES
EYEGLASSES
VERBAL INSTRUCTIONS
POSITION OBJECT (12-15 INCHES)
TRACKING
PUPIL SIZE
CHECK FOR LACK OF SMOOTH PURSUIT
CHECK FOR DIST. NYSTAGMUS @ MAX. DEV.
CHECK ONSET OF NYSTAGMUS PRIOR TO 45~
TOTAL THE CLUES
CHECK FOR VERTICAL NYSTAGMUS
Appellant argues Trooper Maddock checked for nystagmus for three seconds where the manual states four seconds. We disagree. The manual at VIII-8 states "approximately four seconds." Appellant also argues Trooper Maddock was imprecise as to how far out he checked for nystagmus (45~ or white is still showing in the corner of the eye):
 And was it also three seconds when checking for the final one onset before forty five degrees. How long did it take your finger to get to forty five degrees?
 To get to forty five degrees . . . I don't know . . . I go all the way out to maximum deviation as far as from the color part to his corner and if I would get any type of nystagmus prior to me reaching his shoulder point I would count that as nystagmus prior to on set of forty five degrees.
So you did the second two tests at the same time?
 No. You . . . you're saying how long did it take me to do the . . .
Yeah.
 The nystagmus off set forty five. I did not stop at his shoulder. Okay. I went all the way to the colored part.
 So you performed both of the tests sort of with one motion?
 No. I did the first three lack of smooth pursuit first and then I did maximum deviation second and then the nystagmus prior to the forty five degree angle third. But you're asking me as far as how long did it take me to get it there. I did not . . . I did not stop right there. I went all the way down on the third test . . . all the way down to the colored part of his eye reaching the corner.
October 2, 2000 T. at 20-21.
We concur with the trial court that there was strict compliance and the admissibility of the HGN test was correct. As for the one-leg stand test, appellant did not claim Trooper Maddock deviated from the required procedures but rather appellant was unable to perform the test due to his physical impairment. As we noted supra, the issue was never admissibility but probable cause. Given the observations by Trooper Maddock, there existed probable cause.
Assignment of Error II is denied.
 III
Appellant claims he should have been permitted to cross-exam regarding the conduct of the field sobriety tests. The issue of how Trooper Maddock conducted the field sobriety tests is a question of law, not fact. Based upon our decision in Assignment of Error II, we find this assignment to be moot.
 IV
Appellant claims the trial court erred in taking questions from jurors at the conclusion of the case. We agree.
While this court has not condemned the practice of permitting jurors to pose questions, this court has set forth the following guidelines:
 The jurors should write down their proposed questions. Counsel for both parties and the trial court judge should review the questions for objections, on the record, outside the hearing of the jury. Once juror questions are approved by the trial court, the clerk or bailiff should read the questions to the witness.
 Huffman v. Glastic Corporation, et al. (April 5, 2001), Tuscarawas App. No. 1999AP120071, unreported, at 3; See, also, State v. Mascarella (July 6, 1995), Tuscarawas App. No. 94AP100075, unreported.
These procedures should be exercised only after a witness has testified and before the witness has left the stand, not at the conclusion of the case. Jurors are not investigators and should not be given leeway to seek out additional information after both sides have presented their respective cases.
Although we believe the trial court properly addressed the juror's questions, we nonetheless find the timing of the questioning to be in error.
Assignment of Error IV is granted.
The judgment of the Massillon Municipal Court is hereby affirmed in part, reversed in part and remanded.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Massillon Municipal Court of Stark County, Ohio is affirmed in part, reversed in part and remanded to said court for new trial.
 ______________________________ By Farmer, J.
Gwin, P.J. concur.
Hoffman, J. concurs separately.
[1] We note the trial court found appellant "physically can not do the [one-leg stand] test due to physical/medical condition," but the trial court never specifically suppressed the results of said test. See, Journal Entry filed October 2, 2000. At trial, Trooper Maddock was questioned about the test.
[2] Holman's facts and syllabus are limited strictly to the determination of probable cause to arrest. In a concurring opinion, Judge Kenneth A. Rocco (sitting by assignment), stated the following at 429:
 I would extend the court's holding here to explicitly state that field sobriety test results are admissible at trial only if the officer strictly complied with standardized testing procedures. The majority has demonstrated that the care with which a field sobriety test is administered has a decisive effect on the test's reliability, and hence its evidentiary value. It seems self-evident to me that if strict compliance with testing procedures is necessary to demonstrate probable cause to arrest, it becomes even more necessary if the tests are to be used to prove guilt.
The majority did not adopt this extended interpretation. We find the admissibility of tests at trial as some of the evidence surrounding the issue of impaired driving is not covered by the strict compliance standard.