OPINION
Appellant Kentrell Wesley appeals the decision of the Stark County Court of Common Pleas that overruled his motion to suppress evidence seized during a body cavity search. The following facts give rise to this appeal. On the evening of March 31, 1999, Canton City Police Officer Michael Peterson and his partner were traveling on Second Street when they heard loud music coming from a vehicle. The officers decided to stop the vehicle for violating the city ordinance that prohibits excessive noise in motor vehicles. As they followed the vehicle to effectuate a stop, the officers noticed the rear license plate was not illuminated and the vehicle turned without signaling. After stopping appellant's vehicle, Officer Peterson asked appellant for his driver's license. Appellant had no driver's license as it was suspended. The officers arrested appellant for driving under suspension and placed appellant, in the cruiser, with his hands handcuffed behind his back. The officers then began processing appellant's vehicle to be impounded. While processing the vehicle, Officer Peterson observed appellant moving around a lot in the cruiser. As the officers approached the cruiser, appellant continued to move about. The officers removed appellant, from the cruiser, and patted him down. The officers did not find anything and placed him back in the cruiser. A short time later, appellant again began to move around suspiciously in the cruiser. When appellant saw the officers look at him he would stop moving. Officer Peterson again removed appellant, from the cruiser, and conducted another pat-down search to ensure that appellant did not have a weapon or contraband on his person. Officer Peterson testified that while en route to the police station, appellant constantly moved, in the back seat, as though he was trying to get to the back of his pants. Upon arrival at the police station, Officer Peterson placed appellant in an interview room. Officer Peterson observed appellant through a peep hole. Appellant's hands were in the back of his pants. Officer Peterson opened the door and asked appellant what he was doing and appellant responded "nothing." After completion of the paperwork, the officers transported appellant to the Stark County Jail. On the way to the jail, Officer Peterson asked appellant if he had anything in his pants or buttocks area. Appellant did not respond. Officer Peterson told appellant that if he had something on him, and the officers at the jail discovered it, he would be charged with conveyance. Appellant responded, "If they find it, they find it. If they find it, they find it." Upon arrival at the jail, the officers advised Corrections Officer Gregory Hawkins of what they observed appellant doing. Officer Hawkins felt a lump in appellant's buttocks area. Thereafter, Officer Hawkins received written authorization, from Captain Michael McDonald, to perform a strip search of appellant. The strip search revealed that appellant had a plastic baggie partially protruding from his rectum. Upon seeing the baggie, Corrections Officer Hawkins again contacted Captain McDonald who provided written authorization for a body cavity search of appellant. James Quinn, a registered nurse at the jail, performed the body cavity search and removed a baggie, from appellant's rectum, containing twenty or thirty pieces of crack cocaine. Nurse Quinn conducted the search after receiving a form which authorized him to do a strip search or body cavity search. Nurse Quinn did not obtain a search warrant prior to conducting the body cavity search because the drugs in appellant's rectum may have posed a life threatening situation depending on the drug involved and the amount. On May 3, 1999, the Stark County Grand Jury indicted appellant with one count of possession of cocaine and one count of tampering with evidence. Appellant entered a plea of not guilty to these charges and subsequently filed a motion to suppress. The trial court conducted a hearing on appellant's motion on June 9 and 15. At the conclusion of the hearing, the trial court overruled appellant's motion. The trial court journalized its decision, by judgment entry, on June 17, 1999. Thereafter, appellant pled no contest to the charges and the trial court sentenced him to fourteen months in prison. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration.
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO A STOP OF A MOTOR VEHICLE WITHOUT PROBABLE CAUSE IN VIOLATION OF APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEIZURE.
 II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM A STRIP SEARCH AND A BODY CAVITY SEARCH CONDUCTED IN VIOLATION OF APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES.
 I
In his First Assignment of Error, appellant contends the trial court erred in overruling his motion to suppress evidence obtained pursuant to a stop of his motor vehicle without probable cause. We disagree. Appellant alleges a lack of probable cause for his initial arrest. Appellant challenges the trial court's conclusion on the basis that it incorrectly decided the issue raised in his motion. Under this type of challenge, we must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; and State v. Guysinger (1993), 86 Ohio App.3d 592, 594. The law on probable cause has developed from the United States Supreme Court's holding in Illinois v. Gates (1983), 462 U.S. 213. Probable cause to arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974), 38 Ohio St.2d 122, paragraph one of the syllabus. This determination is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, event escalating reasonable suspicion into probable cause, association with criminals and location. Katz, Ohio Arrest, Search and Seizure (1995), 77-81, Section T. 3.05(A), (B) and (C). In the case sub judice, the officers had ample reason to believe appellant committed an offense. Officer Peterson testified that he observed appellant commit several traffic violations prior to stopping him. Specifically, appellant violated the city ordinance prohibiting loud music, appellant failed to signal prior to making a turn and appellant's rear license plate, on his vehicle, was not properly illuminated. Tr. June 9, 1999, at 6, 9, 13. Although appellant does not challenge the initial stop of his vehicle, we find these traffic violations gave the officers sufficient probable cause to make the initial stop and request appellant to produce his driver's license. Following the stop, the officers discovered that appellant's driver's license had been suspended. Clearly, at that point, the officers had probable cause to place appellant under arrest. We conclude the facts of this case provided the officers, with probable cause, to arrest appellant. The trial court did not err when it denied appellant's motion to suppress on the basis that the officers lacked probable cause to arrest him. Appellant's First Assignment of Error is overruled.
 II
Appellant maintains, in his Second Assignment of Error, that the trial court erred when it overruled his motion to suppress the evidence seized from the strip search and body cavity search as these searches were in violation of his Fourth Amendment right to be free from unreasonable searches. We disagree. In addressing this assignment of error, we again must determine whether the facts meet the appropriate legal standard. R.C. 2933.32 addresses strip searches and body cavity searches. This statute prohibits such searches except at authorized therein. Law enforcement officials must meet certain requirements before conducting a strip search or body cavity search. These requirements include: probable cause, a search warrant and written authorization from the person in command of the law enforcement agency. R.C. 2933.31(B)(2) addresses probable cause. In order to conduct a strip search or body cavity search, the law enforcement official must have "* * * probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, * * * that could not otherwise be discovered." In determining probable cause, the nature of the offense with which the person is to be charged, the circumstances of the person's arrest, and the prior conviction record of the person shall be considered. R.C. 2933.32(B)(4) requires that before conducting a body cavity search, a search warrant must be obtained unless there is a legitimate medical reason or medical emergency justifying the warrantless search. Finally, under R.C. 2933.32(B)(5), a strip search or body cavity search is permitted only after obtaining written authorization for the search from the person in command of the law enforcement agency, unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable. Appellant alleges that as to the strip search and body cavity search, the officers failed to comply with the requirements of R.C. 2933.32. We will first address the strip search. Appellant maintains there was no legitimate medical reason justifying the initial strip search. In support of this argument, appellant refers to certain requirements the nurse, at the jail, failed to follow prior to conducting the strip search and body cavity search. We find this argument focuses on the issue of probable cause. Probable cause is defined as "a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91; State v. Ratcliff (1994),95 Ohio App.3d 199, 205. The record in this matter contains testimony to support a finding of probable cause to conduct the strip search. Officer Michael Peterson testified about appellant's movement in the cruiser. Tr. June 9, 1999, at 8, 18. Appellant stopped moving, in the cruiser, when he thought the officers were observing him. Id. at 24. Because of all this movement in the cruiser, the officers removed him from the cruiser, twice, in order to conduct a pat-down search. Id. at 22. After transporting appellant to the Canton City Police Department and placing him in an interview room, Officer Peterson observed appellant through a peep hole. Appellant had his hands down the back of his pants. Id. at 10, 27-28. Upon leaving for the Stark County Jail, Officer Peterson had a "strong suspicion" that appellant had something in his pants. Id. at 29. Based on appellant's movement, in the cruiser and his actions in the interview room, a reasonable ground of suspicion existed that appellant was committing an offense. As to the strip search, appellant next argues it was not conducted by a physician or properly licensed nurse as required by R.C.2933.32(B)(4). This section of the statute only applies to body cavity searches and does not apply to strip searches. Appellant next argues a violation of R.C. 2933.32(B)(6) which provides that "* * * only the person or persons who are physically conducting the search and the person who is being searched [are] to observe the search." Officer Peterson, as well as other officers, remained in the room during the strip search and body cavity search. We agree with appellant that a violation of R.C. 2933.32(B)(6) occurred. However, this violation was statutory in nature and not constitutional, and therefore, we find the exclusionary rule inapplicable. We reached a similar conclusion in State v. Rucker (Mar. 20, 1995), Stark App. No. 1994 CA 00224, unreported. In Rucker, we stated: Although R.C. 2933.32 was violated, suppression of evidence is not among the remedies provided within the statute. The exclusionary rule is invoked only for violations of constitutional nature and will not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule. City of Kettering v. Hollen (1980), 64 Ohio St.2d 232,234-235. Id. at 2.
Appellant sets forth two arguments challenging the body cavity search. Appellant first argues there was no legitimate probable cause justifying a body cavity search. We previously addressed the issue of probable cause, in connection with the strip search, and concluded probable cause existed to conduct the strip search. Probable cause also existed to conduct the body cavity search. Officer Peterson testified that he observed a baggie containing a couple of rocks in appellant's buttocks. Tr. June 9, 1999, at 12, 34, 42. This observation provided probable for the body cavity search. Finally, appellant challenges the fact that the officers did not have a search warrant when they conducted the body cavity search. R.C. 2933.32(B)(4) requires a search warrant unless there is a legitimate medical reason or medical emergency. James Quinn, the nurse at the Stark County Jail that conducted the body cavity search, testified that he explained to the officers that depending on the contents of the baggie, a person may be in danger if the baggie breaks containing the substance and the substance is absorbed into the person's system. Id. at 54-55. Mr. Quinn testified that he conducted the body cavity search believing a search warrant had been issued by the trial court. Id. at 58-59. Although a search warrant had not been obtained, Mr. Quinn did testify that depending on the substance and the amount of the substance, a legitimate medical reason existed to remove the substance without waiting to obtain a search warrant. Id. at 54-55. We conclude appellant cannot establish a violation of R.C.2933.32(B)(4). Based on the above, we find the trial court properly overruled appellant's motion to suppress as it relates to the strip search and body cavity search. Appellant's Second Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: WISE, J. FARMER, P.J. READER, V.J.