OPINION
Defendant, Lemar Davis, appeals from his conviction for driving without a license, which was entered on his plea of no contest after the trial court denied Defendant's motion to suppress evidence. A companion charge of improper operation of a motor vehicle was dismissed by the State as part of a bargain for Defendant's no contest plea.
Defendant was cited for both offenses by Dayton Police Officer James R. Krauskopf on May 13, 2000. Officer Krauskopf testified at the hearing on Defendant's motion to suppress that he was on patrol and at the intersection of West Third Street and Gettysburg Avenue when, at about 1:46 a.m., he saw a car, which was driven by Defendant Davis. When asked what drew his attention to the car, Officer Krauskopf testified:
 "I was behind a vehicle. The driver of the vehicle in front of me. We were both sitting at a red light. I could barely see the top of his head over the top of the head rest area of the car, which made me think this was a very small person or the person operating the car was possibly — umm — sleeping.
Q. Do you recall what type of vehicle this was?
 A. I believe it was a Chevrolet, a rather large vehicle.
 Q. Okay. Did anything alarm you about what you saw in that vehicle?
 A. Mainly upon the light turning green, he turned left in front of me to travel east on Third as I did. I could see the driver's left foot hanging outside of the car, and the driver's window was rolled down. It was open.
 Q. Okay. When you saw that did that cause any particular alarm for you?
A. Yes. It did.
Q. Why?
 A. In my experience and training this is an improper way of operating a vehicle. This not proper seating in a car with the seat belt laws and the operation of a car, as this will diminish the ability to react to any type of situation that may occur in front of you and also causes you to lounge back in the car, as if you were in a recliner in your house, which would decrease your visibility of anything going on around you.
Q. Did you proceed to stop this vehicle?
 A. Immediately upon seeing this, I activated my lights, and he immediately pulled over." (T. 6-7).
Officer Krauskopf cited Defendant for a violation of Dayton City Ordinance 71.18(A). That section provides: "No person shall operate a vehicle . . . on any street . . . without due regard for the safety of persons or property." Upon discovering that Defendant had no operator's privileges, Officer Krauskopf also cited him for driving without a license.
The trial court overruled Defendant's motion to suppress evidence. He entered a no contest plea to the driving without a license charge, and was convicted. The trial court sentenced Defendant to ninety days in jail, but suspended sixty of those days. The court also stayed execution of the sentence pending appeal.
Defendant Davis filed a timely notice of appeal. He now presents a single assignment of error, which states:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DISCOVERED DUE TO HIS UNCONSTITUTIONAL SEIZURE.
Defendant-Appellant Davis argues, as he did in the trial court, that Officer Krauskopf's stop of his vehicle, which was a detention for the purpose of issuing a citation, was an illegal seizure per the Fourth Amendment because Officer Krauskopf lacked either a warrant to perform the seizure or probable cause to seize Defendant.
A law enforcement officer who observes facts and circumstances which portray probable cause to believe that violation of law has occurred may seize the person of the offender in order to perform an arrest or issue a citation, even in the absence of a prior judicial warrant. Upon the filing of a motion to suppress evidence that the detention yielded, the question presented is whether the facts and circumstances the officer observed portray probable cause.
To have probable cause to perform an arrest or issue a citation, an officer must have information sufficient in its nature and character to warrant a prudent person in believing that a violation of law has occurred. Brinegar v. United States (1949), 338 U.S. 160; State v. Timson (1974), 38 Ohio St.2d 122. The probable cause standard requires significantly less than the "beyond a reasonable doubt" standard required for conviction. Brinegar, supra.
Probable cause is also less than that amount of evidence necessary to make out a prima facie showing of guilt. Spinelli v. United States (1969), 383 U.S. 410. Probable cause has been defined as a "fair probability" that criminal activity is afoot. State v. George (1989),45 Ohio St.3d 325 . When evaluating facts and circumstances to determine probable cause, courts should use both flexibility and common sense. Texas v. Brown (1983), 460 U.S. 730.
When police do not seek a warrant, the reviewing court must make its own independent assessment of probable cause. Terry v. Ohio (1968),392 U.S. 1. The court is not bound by the belief of the officer. The issue is whether at the moment of search or arrest, the officer had probable cause. Beck v. Ohio (1964), 379 U.S. 89. In assessing the officer's conclusion that probable cause existed, the court must allow the reasonable inferences that the officer drew from the facts in light of the officer's experience and training as a police officer. United States v. Cortez (1981), 449 U.S. 411. Further, an appellate court is to make its own de novo determination of the mixed law and fact decision: whether or not the facts constituted probable cause. Ornelas v. United States (1996), ___ U.S. ___, 116 S.Ct. 1657, 134 L.Ed.2d 911.
Defendant-Appellant Davis doesn't dispute the facts that Officer Krauskopf said he observed. Rather, Davis argues that the officer's conclusions are mere subjective beliefs, unsupported by any other facts which reasonably demonstrate that Davis was operating his vehicle "without due regard for the safety of persons or property." R.C.G.O. 71.18(A). Davis points out that, in the position he had assumed, he was able to pull his car over to the side of the street when Officer Krauskopf signaled him to do so.
An officer's opinions are necessarily subjective beliefs. That the officer acted on the basis of his opinions is not the test for a lack of probable cause, however. The test is whether the facts and circumstances before the officer, when considered objectively, would warrant a prudent person in believing that a crime has been committed. Brinegar, supra. In determining whether that belief hypothetically could exist, reasonable inferences from the facts observed should be considered. When a court considers those inferences, some deference should be given to the officer's judgment and experience concerning what the facts before him meant.
We do not agree that Officer Krauskopf lacked probable cause to stop Defendant-Appellant in order to cite him. R.C.G.O. 71.18(A) does not require erratic driving as Defendant-Appellant suggests. It requires only a lack of due regard for the safety of persons and property, when operation takes place. That is portrayed here.
Defendant-Appellant's unorthodox posture could reasonably be found to have impaired his capacity to operate his own vehicle safely, especially should he be confronted with the need to react quickly to avoid another vehicle or pedestrian that abruptly came into his path of travel. Dangling his left leg out the window as he did diminished Defendant's ability to reach all the controls of his vehicle quickly in that situation, thus endangering other persons using the highways and the property about him.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________ GRADY, J.,