The STATE of Ohio, Appellee,

v.

GROSZEWSKI, Appellant.

[Cite as *State v. Groszewski,* 183 Ohio App.3d 718, 2009-Ohio-4062.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–08–1038.

Decided Aug. 14, 2009.

Julia R. Bates, Lucas County Prosecuting Attorney, and Michael D. Bohner, Assistant Prosecuting Attorney, for appellee.

Alan Konop and Peter J. Wagner, for appellant.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment issued by the Lucas County Court of Common Pleas, following appellant's no-contest plea to operating a vehicle while intoxicated ("OVI"). Because we conclude that the trial court erred in denying appellant's motion to suppress, we reverse.

{¶ 2} Appellant, Gary Groszewski, was indicted on December 15, 2006, on a single count of driving a motor vehicle while intoxicated, in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(d). Appellant filed a motion to suppress sobriety tests, lay-witness observations, the results of a blood alcohol test, and appellant's statements made while being tested at a hospital. The following information was presented to the court during the suppression hearing through testimony of various witnesses.

{¶ 3} Appellant was employed by the city of Toledo, Ohio, as a utility worker in the Division of Transportation Department. Appellant would be assigned to complete various jobs around the city, using a city-owned vehicle. On December 7, 2006, appellant reported for work at 7:00 a.m., and his supervisor, Joe Whitten, handed him his work assignment for that day. Although Whitten testified that he thought he smelled the faint odor of alcoholic beverage when appellant came into his office, the supervisor was not certain and did not take any action at that time. Whitten saw appellant backing his city vehicle out of the shop around 7:35 to 7:40 a.m.

{¶ 4} Whitten stated that shortly after appellant left his office, a young woman employee approached him and accused him of running her off the road in a red Jeep vehicle. The supervisor said that although the city had utilized red Jeeps, they were no longer in service at the time of this incident. He stated that appellant also drove a red Jeep similar to those formerly used by the city.

{¶ 5} A short time later, another city employee came to Whitten's office and said that he overheard several employees saying that appellant was "tore up." After speaking with the superintendent, Dave Harris, Whitten called appellant back to the office shortly before 8:00 a.m. Appellant told Whitten that he was fueling his vehicle and then returned to the office at approximately 8:20 a.m. Appellant's daily mileage log sheet confirmed that he initially left the shop at 7:48 a.m., arrived for fueling at 7:58 a.m., left there at 8:14 a.m., and then arrived back at 8:22 a.m.

{¶ 6} Whitten testified that he smelled the faint odor of alcohol when appellant returned, but could not identify whether it came from his breath or clothing. The two then went to Superintendent Harris's office. Eventually, Whitten and the union representative, Don Czerniak, took appellant to a local hospital to submit to a breathalyzer test scheduled for 9:00 a.m. Appellant entered the testing area at

approximately 9:15 a.m., and Whitten stayed out in the hospital waiting room, outside the occupational-health area.

{¶ 7} Whitten did not see appellant again until approximately 10:30 a.m. The results of the breath test, which indicated a blood alcohol level of 0.093, were faxed to the city of Toledo, Department of Resources. Whitten confirmed several times that appellant was being tested pursuant to his signed employment contract. That contract stated that failure to submit to or testing positive on any drug or alcohol test would result in his dismissal from employment with the city. It also stated that appellant consented to submit to drug/alcohol testing and authorized the release of any test results to the city of Toledo.

{¶ 8} Meanwhile, a uniformed Toledo Police officer, Sergeant Richard Murphy, was also at the hospital, but on unrelated personal business. As Murphy was leaving the hospital at approximately 10:00 a.m., he saw Bill Franklin, the Toledo City Director of Public Service, who was speaking on his cell phone with a Toledo police captain. The captain told Murphy via Franklin's cell phone that the Toledo Police Department had received information that a city employee may have driven a city vehicle while intoxicated. At the captain's instruction, Murphy reentered the hospital to talk with Whitten and Czerniak.

{¶ 9} Whitten told Murphy that he had seen appellant drive a city vehicle and said a list of employees who saw him drive would be compiled. Czerniak also then divulged the test results to Murphy and showed him a copy of the report. At this point, Murphy interviewed appellant, who commented that he "screwed up," stating that he had consumed two glasses of wine the previous evening. Murphy said that appellant's eyes appeared to be "glossy" and then asked appellant to perform two field-sobriety tests, a touch-the-nose test and a one-legged-stand test. Murphy acknowledged that he had not administered such tests in a long time, had not been recently involved in many OVI investigations, and was not comfortable with the standards required for field sobriety testing. For that reason, Murphy did not perform a horizontal nystagmus test and did not know whether he had conducted the one-legged-stand test under the appropriate standards.

{¶ 10} Murphy then told appellant that he was going to be arrested for an OVI violation. Two more police officers then arrived at the hospital at 10:35 a.m. After consulting with the city law director, one of the officers read appellant the warnings on the back of the Ohio Administrative License Suspension ("ALS") form. The officer than placed appellant under arrest. At the officer's request, appellant consented to submit to a blood test. The first officer could not remember the exact time the blood test was administered. The second officer testified that the nurse gave him the completed blood kit at 11:00 a.m., which was also the time recorded on the "Property Control Form."

{¶ 11} The trial court granted appellant's motion to suppress the field-sobriety tests because they were not performed according to appropriate standards. However, the court denied appellant's motion to suppress Murphy's lay witness observations of the field-sobriety tests. The court also denied the motion to suppress statements made to police officers as a result of the employment testing, pursuant to *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562. The court stated that there was "no evidence that [appellant] made any incriminating statements to his supervisors and co-workers during the investigation." The court further ruled that *Garrity* was inapplicable to the breath and blood tests, because they were nontestimonial in nature.

{¶ 12} Ultimately, appellant pleaded no contest and was found guilty of OVI. The court sentenced appellant to five years of community control, DNA testing, six months' confinement in the Correctional Treatment Facility, a $1,000 fine, a four-year driver's license suspension, and a suspended 30-month prison sentence. The court granted a stay of execution as to the Correctional Treatment Facility portion of the sentence, pending appeal.

{¶ 13} Appellant now appeals from that judgment, arguing three assignments of error:

{¶ 14} "I. First Assignment of Error: The trial court erred by admitting evidence obtained in violation of *Garrity v. State of New Jersey*.

{¶ 15} "II. Second Assignment of Error: The arresting officer lacked reasonable suspicion to question Mr. Groszewski, and lacked probable cause to arrest Mr. Groszewski.

{¶ 16} "III. Third Assignment of Error: The blood test should have been suppressed because the state failed to comply with the 'three hour' rule."

I

{¶ 17} We will address appellant's first two assignments of error together. In his first assignment of error, appellant asserts that evidence obtained pursuant to his employer's request for a drug/alcohol test at the hospital violated his constitutional rights. In his second assignment of error, appellant argues that the police lacked reasonable suspicion and probable cause to arrest him for DUI. We agree.

{¶ 18} The Fifth Amendment protects persons against compelled self-incrimination, and any testimony given under compulsion invokes that constitutional right. See *Murphy v. Waterfront Comm.* (1964), 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, limited on other grounds by *United States v. Balsys* (1998), 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575. If the state forces a public employee to choose between either answering incriminating questions or forfeit-

ing his job for refusing to answer, the state cannot use the employee's statements against him in a subsequent criminal prosecution if the employee chooses to answer, because the statements were not given voluntarily. See *Garrity,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562. Thus, all statements made by the public employee under these conditions become immunized testimony. Id.

{¶ 19} In this case, appellant was taken, by his employer, to the hospital for a drug/alcohol test, including a breathalyzer and blood tests. Any statements made by him while at the hospital for that testing are deemed to be involuntary pursuant to *Garrity,* supra. Additionally, any statements made thereafter to the arresting officers would not have occurred but for appellant's appearance at the hospital for the testing. Therefore, any statements made were immunized and should have been suppressed by the trial court.

{¶ 20} We now turn to the issue of whether the breathalyzer or blood-test results should have also been suppressed. As the trial court properly noted, breathalyzer and field-sobriety tests have been deemed by the Supreme Court of Ohio to be "non-testimonial" and not protected by the constitutional privilege against self-incrimination. See *Piqua v. Hinger* (1968), 15 Ohio St.2d 110, 44 O.O.2d 81, 238 N.E.2d 766, paragraph one of the syllabus. Therefore, because *Garrity,* which addresses incriminating *statements,* has not been applied to breath or blood tests, we decline to extend that case to appellant's test results.

{¶ 21} Nevertheless, in a hospital setting, chemical testing, i.e., a breath test or a blood test to determine alcohol content for the purpose of proving a criminal offense, is a search and seizure within the meaning of the Fourth Amendment. *Schmerber v. California* (1966), 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908. Under Ohio's drunk-driving statutory scheme, R.C. 4511.191 requires a motorist who is suspected of driving while under the influence of alcohol or drugs, to give consent to a breath or blood test or face administrative penalties. However, the statute does not force a person to submit to a test. *Maumee v. Anistik* (1994), 69 Ohio St.3d 339, 342, 632 N.E.2d 497. A person may revoke his or her implied consent to the warrantless search to determine alcohol content after being informed of the consequences of doing so by the officer. Id. The Ohio Supreme Court has previously held that the Fourth Amendment prohibits placing a defendant in a position of choosing between allowing a warrantless search or facing criminal penalties. *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 145, 75 O.O.2d 190, 346 N.E.2d 666.

{¶ 22} The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to

believe that the suspect was driving under the influence. See *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; *State v. Timson* (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 311 N.E.2d 16. "[T]he arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." *State v. Lloyd* (1998), 126 Ohio App.3d 95, 105, 709 N.E.2d 913. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller* (1997), 117 Ohio App.3d 750, 761, 691 N.E.2d 703; *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906.

{¶ 23} In this case, appellant was compelled to submit to the breathalyzer tests and blood tests or risk forfeiting his employment. In addition, his employment contract limited his consent to the test and release of the results only to the city of Toledo. Nothing in the agreement refers to the possibility of criminal prosecution or release of information to any law-enforcement agency. Appellant was not involved in an accident and was not observed by police to be driving in such a way that would indicate that he was under the influence of alcohol. Because appellant did not submit to the test pursuant to a police investigation or court order, both tests would have been warrantless searches in relationship to any potential criminal action.

{¶ 24} Likewise, any sobriety tests performed were not incident to any initial police investigation. Rather, they were performed only after appellant agreed to present himself for the employer's requested testing. Therefore, no probable cause initially existed for police even to be present at the hospital for any type of investigation. Appellant submitted to testing solely at the request of his employer, at the advice of his union representative, with only the potential penalty of losing his job as a consequence.

{¶ 25} Although we do not condone appellant's actions, neither can we condone the "ambush" tactics that were employed to create a criminal offense from an employee's compliance with his employer's drug/alcohol testing requirement. Therefore, under the specific facts and circumstances of this case, we conclude that the police obtained the results of the breathalyzer and blood tests in violation of appellant's Fourth Amendment right against illegal search and seizure. As a result, we further conclude that the trial court erred in denying appellant's motion to suppress the blood and breathalyzer test results, as well as any observations of any "sobriety tests," because appellant's consent to the testing was not voluntary as it related to any criminal charges.

{¶ 26} Accordingly, appellant's first and second assignments of error are well taken. Appellant's third assignment of error is deemed moot.

{¶ 27} The judgment of the Lucas County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

HANDWORK, P.J., concurs.

PIETRYKOWSKI, J., concurs in judgment only.