**[Cite as *State v. Bruck*, 2021-Ohio-2789.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Bowling Green        Court of Appeals No. WD-20-072

       Appellee        Trial Court No. 20TRC02309

v.

Andrey B. Bruck        **DECISION AND JUDGMENT**

       Appellant        Decided: August 13, 2021

\* \* \* \* \*

Hunter Brown, Bowling Green City Prosecutor, for appellee.

W. Alex Smith, for appellant.

\* \* \* \* \*

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Bowling Green Municipal Court, convicting appellant, Andrey Bruck, of one count of driving while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On June 8, 2020, appellant was charged with one count of driving while under the influence of alcohol or drugs.[1]  Appellant entered an initial plea of not guilty. On August 21, 2020, appellant filed a motion to suppress.

{¶ 3} A suppression hearing was held on October 5, 2020, at which the state called Ohio State Highway Patrol Trooper Chris Kiefer as a witness.  Kiefer testified that on Saturday, June 6, 2020, at approximately 1:30 a.m., he was standing by the gas pump at the patrol post when he observed a car turn around in the middle of the road, possibly flash its bright lights in Kiefer's direction, honk its horn, back up in the road, and run a stop sign to make a turn onto State Route 582.  Kiefer pursued the car, and initiated a traffic stop.

{¶ 4} During the traffic stop, Kiefer detected a strong odor of alcohol coming from the vehicle, but he could not determine if it was coming from appellant or from the passenger.  As he was speaking with appellant, Kiefer noticed that appellant's eyes were bloodshot and glassy, and that his speech was slightly slurred and lethargic.  Notably, Kiefer's report did not include the fact that appellant's eyes were bloodshot and glassy. Kiefer then asked appellant to exit the vehicle and perform field sobriety tests.

{¶ 5} Kiefer testified that he first conducted the horizontal gaze nystagmus test, during which he again noticed that appellant's eyes were glassy and bloodshot.  Kiefer

---

[1] Appellant was also charged with violations of R.C. 4511.19(A)(1)(d) and 4511.43, but those charges were dismissed at sentencing pursuant to a plea agreement.

2.

also observed six out of six clues that appellant was impaired. On cross-examination, Kiefer testified that he checked for equal tracking and equal pupil size. Kiefer later clarified that although his report does not indicate that he checked for equal tracking and equal pupil size, he looked for those indicators during his analysis of whether appellant's eyes lacked smooth pursuit.

{¶ 6} Kiefer then conducted the walk and turn test, during which he observed three out of nine clues that appellant was impaired. Kiefer testified on cross-examination that four out of nine clues demonstrates that a person is impaired, but that the presence of three clues can show impairment.

{¶ 7} Kiefer also conducted the one-legged stand test. Kiefer observed two clues that appellant was impaired; specifically that appellant raised his arms for balance and swayed side to side.

{¶ 8} Finally, Kiefer conducted a non-standardized alphabet test, in which he directed appellant to say the alphabet from "C" to "X." Kiefer testified that appellant failed to recite the letters "S," "T," "U," "V," and "W." Following the field tests, Kiefer placed appellant under arrest for operating a vehicle under the influence.

{¶ 9} Following the hearing, the trial court denied appellant's motion to suppress. The trial court reasoned that the "interesting" driving actions of appellant, along with appellant running the stop sign, gave Kiefer probable cause to initiate the traffic stop. The court further reasoned that the driving actions, along with the strong odor of alcohol,

3.

glassy and bloodshot eyes, slightly slurred speech, and the clues on the field sobriety tests, gave Kiefer probable cause to arrest.

{¶ 10} Upon the trial court's denial of his motion to suppress, appellant agreed to plead no contest to the charge of driving while under the influence of alcohol or drugs. The trial court accepted appellant's plea, found him guilty, and sentenced him to 33 days in jail, with 30 of those days suspended. The court ordered that the other three days could be served at a driver intervention program. The trial court also imposed a $1,075 fine, with $475 suspended. Appellant was also placed on two years of community control, and received a mandatory one-year driver's license suspension. The trial court stayed all of the sanctions pending appeal, except for the driver's license suspension.

## II. Assignment of Error

{¶ 11} Appellant has timely appealed his judgment of conviction, and now asserts one assignment of error for our review:

1. The court erred by denying the motion to suppress.

## III. Analysis

{¶ 12} Review of a trial court's grant or denial of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court defers to a trial court's factual findings made with respect to its ruling on a motion to suppress where the findings are supported by competent, credible evidence. *Id*.; *State v. Brooks*, 75 Ohio St.3d 148, 154, 661

4.

N.E.2d 1030 (1996). "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 13} In support of his assignment of error, appellant first argues that Kiefer lacked reasonable suspicion to administer the field sobriety tests. "[A] request that a driver perform field sobriety tests must be separately justified by specific, articulable facts showing a reasonable basis for the request." (Internal quotations omitted.) *State v. Watkins*, 2021-Ohio-1443, 170 N.E.3d 549, ¶ 25 (6th Dist.), quoting *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 15; *State v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998). "Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances." *Id.*

{¶ 14} Appellant contends that the present case is similar to *State v. Stricklin*, 6th Dist. Lucas No. L-10-1277, 2012-Ohio-1877, in which we held that the officer lacked reasonable suspicion to conduct field sobriety tests. In that case, Stricklin was pulled over for only having one lighted headlight. *Id.* at ¶ 3. During the officer's conversation with Stricklin, the officer observed a "slight odor" of alcohol on Stricklin's breath, and noticed that he had bloodshot, glassy eyes. *Id.* at ¶ 4. The officer also testified that Stricklin appeared "anxious." *Id.* Stricklin denied having consumed any alcohol or

5.

illegal drugs. *Id.* When the officer ran Stricklin's license, she discovered that he had a prior OVI conviction from four years earlier. *Id.*

{¶ 15} On appeal, we held that the trial court erred in denying Sricklin's motion to suppress. We reasoned that Stricklin had not demonstrated any erratic driving or exhibited any other behaviors which would indicate that he was intoxicated, and that the only valid factors which formed the basis of the officer's decision to conduct field sobriety tests were a slight odor of alcohol and glassy, bloodshot eyes. Thus, we held that under the facts of that case, those factors alone "did not provide a reasonable articulable suspicion to warrant the administration of field sobriety tests." *Id.* at ¶ 15.

{¶ 16} Recently, this court again held that an officer lacked reasonable suspicion to conduct field sobriety tests. In *Watkins* at ¶ 37, this court held that reasonable suspicion was not present where Watkins entered the Ohio State Highway Patrol post to pick up her friend, and where Watkins did not stumble or slur her words, her eyes "were bloodshot and glassy (at approximately 3:00 a.m.), she smelled of alcohol (of an unspecified strength), and she admitted to having had one glass of wine (approximately seven hours earlier)."

{¶ 17} Here, however, there are several factors that meaningfully distinguish the present case from *Stricklin* and *Watkins*. First, and perhaps most importantly, appellant was observed driving in an "interesting" manner immediately prior to the stop. Appellant turned his car around in the middle of the road, flashed his bright lights in Kiefer's

6.

direction, honked his horn, backed up in the roadway, and left in the opposite direction, running a stop sign to turn onto State Route 582. Second, Kiefer testified that he noticed a "strong" odor of alcohol, as opposed to the "slight" odor in *Stricklin*. Finally, Kiefer testified that appellant's speech was slightly slurred and lethargic, which we specifically noticed was absent in *Watkins*. These factors, in conjunction with the time of the incident being in the early morning hours on a Saturday, lead us to conclude that under the totality of the circumstances Kiefer had reasonable suspicion to conduct the field sobriety tests.

{¶ 18} Appellant next argues that the field sobriety tests were not conducted in accordance with the National Highway Traffic Safety Administration ("NHTSA") handbook. "[T]he results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 11, citing R.C. 4511.19(D)(4)(b). Generally, the results of field sobriety tests are admissible "so long as the proper foundation has been laid as to both the administering officer's training and ability to administer the tests and the actual technique he or she used to administer the tests." *State v. Boles*, 2020-Ohio-4485, 158 N.E.3d 1013, ¶ 15 (2d Dist.), citing *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. "Accordingly, the State's burden of proof regarding the admissibility of field sobriety test results 'is not an onerous one'; 'general testimony that all pertinent rules and regulations had been followed in conducting the defendant's

7.

test, if unchallenged, would amount to a sufficient foundation for the admission of the results.'" *Id.*, quoting *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11. "For example, testimony by the officer that he or she had been trained to perform the HGN test under NHTSA standards, and that the test was performed in the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards." *Id.*, quoting *State v. Reynolds*, 2d Dist. Greene No. 2012-CA-64, 2014-Ohio-3642, ¶ 27.

{¶ 19} Here, Kiefer testified that he had been trained on how to conduct field sobriety tests in accordance with the NHTSA manual. Kiefer further briefly described the field sobriety tests, and testified that they were conducted in compliance with NHTSA standards.

{¶ 20} At the suppression hearing, and on appeal, appellant argued that Kiefer did not conduct the horizontal gaze nystagmus test in accordance with NHTSA procedures in two ways. First, appellant states—without any citation to authority—that the NHTSA manual forbids the shining of lights in the subject's eyes. Thus, because Kiefer used a flashlight while he was conducting the test, appellant concludes that Kiefer violated NHTSA standards.

{¶ 21} Upon review, we do not find that appellant has satisfied his burden to impeach Kiefer's testimony that he conducted the horizontal gaze nystagmus test in

8.

compliance with NHTSA standards.  On this issue, Kiefer testified that his emergency lights and spotlight were turned off, and that he only used his flashlight because it was dark and he needed some sort of light to be able to accurately observe appellant's eyes. We hold that appellant's unsupported assertion that an officer may not even use a flashlight at night when conducting the horizontal gaze nystagmus test, without more, is insufficient to call into question Kiefer's testimony that the test was done in compliance with the NHTSA manual.

{¶ 22} Appellant's second argument regarding Kiefer's execution of the horizontal gaze nystagmus test is that Kiefer did not check for equal tracking or equal pupil size. However, contrary to appellant's assertion, Kiefer clarified that he looked for those indicators during his analysis of whether appellant's eyes lacked smooth pursuit. Therefore, we hold that clear and convincing evidence exists that the field sobriety tests were conducted in substantial compliance with NHTSA guidelines, and thus the results of those tests should not be excluded.

{¶ 23} Finally, appellant briefly argues that Kiefer lacked probable cause to arrest him because there were only three of the nine indicators present in the walk and turn test, when four indicators are needed to demonstrate impairment.  "The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent

9.

person to believe that the suspect was driving under the influence." *State v. Groszewski*, 183 Ohio App.3d 718, 2009-Ohio-4062, 918 N.E.2d 547, ¶ 22 (6th Dist.). When determining probable cause, the court must examine the totality of facts and circumstances surrounding the arrest. *Id.*, citing *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997).

{¶ 24} Here, the facts and circumstances reveal that in the early morning hours on a weekend, appellant drove his vehicle in an abnormal fashion and ran a stop sign. When appellant was pulled over, there was a strong odor of alcohol coming from the car, appellant had glassy and bloodshot eyes, and his speech was slightly slurred and lethargic. The trooper then conducted field sobriety tests and observed six out of six indicators on the horizontal gaze nystagmus test, three out of nine indicators on the walk and turn test, and two out of five indicators on the one-legged stand test. Finally, appellant was unable to repeat the alphabet from "C" to "X," in that he skipped the letters "S," "T," "U," "V," and "W." From these facts, we hold that probable cause existed to believe that appellant was driving under the influence.

{¶ 25} Accordingly, the trial court did not err when it denied appellant's motion to suppress, and appellant's assignment of error is not well-taken.

## IV. Conclusion

{¶ 26} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.