[Cite as *State v. Bailey*, **2023-Ohio-1594.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Bowling Green              Court of Appeals No.  WD-22-052

    Appellee                                                       Trial Court No.  22TRC01164

v.

Dakotah Lee Bailey                                         **DECISION AND JUDGMENT**

    Appellant                                                      Decided:  May 12, 2023

* * * * *

Alyssa M. Blackburn, City of Bowling Green Prosecutor, and
Nicholas P. Wainwright, Assistant Prosecuting Attorney, for appellee.

Sophia M. Eufracio, for appellant.

* * * * *

**SULEK, J.**

**{¶ 1}** Appellant, Dakotah Lee Bailey, appeals from the September 13, 2022

judgment of the Bowling Green Municipal Court, denying his motion to vacate

administrative license suspension ("ALS"), denying his motion to suppress evidence, and

convicting him of operating a vehicle while under the influence of alcohol.  For the

reasons that follow, the trial court's judgment is affirmed.

## I.    Facts and Procedural History

{¶ 2} During the early morning hours of March 18, 2022, city of Bowling Green Police officers effected a traffic stop of Bailey's vehicle, which led to on-site sobriety testing and Bailey's arrest.  Immediately following the arrest, Bailey was taken to the police station, where he was asked to take a breath test.  When he refused, the requesting officer placed him under an ALS pursuant to R.C. 4511.191(B)(1).  That same day, the City charged Bailey with operating a vehicle while under the influence of alcohol or drugs, in violation Bowling Green Ordinance § 73.01(A)(1), a first-degree misdemeanor.

{¶ 3} Bailey filed two motions that are relevant to this appeal.  First, he filed a Motion to Vacate ALS, arguing that there were no reasonable grounds to support the suspension, as he never expressly refused to take a breath test, but instead requested to have his attorney present.  At a hearing on the motion, Bailey additionally claimed that the officer who requested the breath test "did not actually see [Bailey] in the car or driving."  After hearing the evidence and the arguments of counsel, the trial court concluded that Bailey failed to show by a preponderance of the evidence that the ALS was improper or unfounded, and, thus, denied Bailey's appeal of the suspension.

{¶ 4} On April 21, 2022, Bailey filed a motion to suppress evidence obtained as a result of the stop and arrest.  He argued that the traffic stop, the sobriety testing, and the arrest were all unlawful.  During the hearing on the motion, the state presented the

2.

testimony of Sergeant Andy Mulinix, Patrolman Caleb Kusmierek, and Patrolman Kris Garman.

## Sgt. Andy Mulinix

{¶ 5} Sergeant Andy Mulinix of the city of Bowling Green Police Department testified that on March 18, 2022, the morning after St. Patrick's Day, at around 2:26 a.m., he observed Bailey's vehicle commit a marked lanes violation by driving over a curb. Moments later, Mulinix observed Bailey's vehicle brush the curb, at which point Mulinix radioed to officers who were riding in a car in front of him.

{¶ 6} Mulinix initiated a traffic stop of Bailey's vehicle. In response to Mulinix's signal to pull over, Bailey drove up onto another curb and stopped with his front two tires fully on the sidewalk. Upon stopping, Bailey immediately exited the vehicle with his hands up. Mulinix yelled at him to get back in the vehicle. Although Bailey did not immediately respond to Mulinix's orders, eventually he returned to his car.

{¶ 7} Mulinix approached the driver's side of the vehicle and saw beer cans, some of which were empty, on the passenger's side seat and floor, together with a case of beer that contained several unopened cans. In addition, Mulinix noticed that Bailey was wearing a St. Patrick's Day themed beaded necklace that had a "shot glass" or a "little mug" hanging from it. Mulinix asked Bailey if he had been drinking, and Bailey answered no. When Mulinix asked him why he had empty beer cans on the seat, Bailey answered that there were none.

3.

**{¶ 8}** Mulinix stated that he could smell alcohol and that Bailey exhibited bloodshot, glassy eyes, and mumbled and slurred speech. He explained that these physical indicators of intoxication, Bailey's erratic driving, the presence of open containers in the vehicle, and Bailey's denial about beer cans on the seat, led him to order Bailey out of the vehicle for field sobriety testing.

**{¶ 9}** Once Bailey exited the vehicle, Mulinix stated he could smell alcohol on Bailey's breath. He also noted that Bailey ignored his commands. According to Mulinix, Bailey's delay in following instructions was an indication that Bailey was "probably under the influence of something." Mulinix patted Bailey down, and then asked Patrolman Kris Garman to conduct field sobriety testing.

### Patrolman Caleb Kusmierek

**{¶ 10}** Patrolman Caleb Kusmierek testified that on March 18, 2022, he and another officer were driving down the road at 2:26 a.m., in a marked patrol car, when they saw Bailey drive his vehicle off the right-hand side of the road. Kusmierek testified that he had been slow to activate the camera in his cruiser; however, once the camera turned on, it caught Bailey's vehicle shaking as Bailey brushed the curb.

**{¶ 11}** Like Mulinix, Kusmierek observed Bailey pull off to the side of the road and on to the sidewalk when the traffic stop was initiated. Kusmierek approached the vehicle and, looking in the window, observed multiple cans of beer, some of which were opened. When he started securing the cans, he noticed that a few still had liquid inside.

4.

{¶ 12} Kusmierek described Bailey's speech—which he heard only after Bailey had exited the vehicle—as slow and slurred. And although he did not get close enough to Bailey to detect any odor or to see Bailey's eyes, he noticed that Bailey was unsteady on his feet.

**Patrolman Kris Garman**

{¶ 13} Patrolman Kris Garman testified that immediately following the initial stop by Mulinix, he performed on-scene field sobriety testing of Bailey. This testing included a horizontal gaze nystagmus test ("HGN"), a "walk and turn" test, a "one-leg stand" test, and an alphabet test.

{¶ 14} During his encounter with Bailey, Garman noticed that Bailey's speech was "pretty consistent[ly]" slurred. He also testified that Bailey stumbled when asked to walk in a straight line and that he swayed back and forth when standing up.

{¶ 15} Garman stated that Bailey exhibited six out of six clues on the HGN test. He further stated that Bailey failed the walk and turn test and the one-leg test, and that he could not successfully recite the alphabet. As a result of Bailey's performance, Garman concluded that Bailey was possibly under the influence of alcohol.

{¶ 16} Next, Garman took Bailey to the police station and requested that he take a breath test. Bailey refused, and Garman marked Bailey's refusal time as 2:57 a.m.

{¶ 17} Garman then placed Bailey under an ALS. He completed a BMV 2255 form, on which he marked that "the driver refused to submit to tests," and that there were

5.

"reasonable grounds for an arrest," including: "Defendant was observed driving up on to the curb in the 200 block of Pearl Street;" "slurred speech;" "unsteady on feet;" "odor;" "HGN;" and "SFST's." Garman read the BMV 2255 form out loud to Bailey and made sure that he understood it.

## Trial Court's Decision

{¶ 18} At the conclusion of the suppression hearing, the trial court found that Bailey's erratic driving at 2:30 in the morning, after St. Patrick's Day, gave officers a reasonable, articulable suspicion to conduct a traffic stop of his vehicle.

{¶ 19} Next, the trial court determined that Bailey's actions in getting out of—and, eventually, back into—the vehicle, together with Mulinix's observation of beer containers, the odor of alcoholic beverages, and Bailey's slurred speech, gave officers reasonable, articulable suspicion to request that Bailey participate in field sobriety tests.

{¶ 20} The court further found that the results of the field sobriety tests would lead a reasonable officer to believe that Bailey was impaired while he was driving his vehicle.

{¶ 21} Based on the totality of the circumstances—including the sobriety test results, the fact that there were open containers in the vehicle, some of which still had liquid in them, and Bailey's bloodshot, glassy eyes and slurred speech—the trial court concluded that there was probable cause to arrest. As a result, the trial court denied Bailey's motion to suppress.

6.

{¶ 22} On August 1, 2022, Bailey pleaded no contest to an amended charge of OVI under the codified ordinances of Bowling Green, Section 73.01(A)(1).  In a judgment entry dated September 13, 2022, the trial court accepted the plea, found Bailey guilty, and sentenced him as follows: (1) by imposing a $1,075.00 fine, with $475.00 suspended; (2) by imposing a 33 day jail sentence, with 30 days suspended and with the three remaining days "to likely be served in a DIP;" (3) by suspending Bailey's license for one year from March 18, 2022 to March 18, 2023; and (4) by placing Bailey on community control through August 1, 2024.  It is from this decision that Bailey now appeals.

## II.    Assignments of Error

{¶ 23} Appellant raises the following assignment of error on appeal:

I. The trial court erred when it failed to grant defendant's motion to suppress.

## III.    Law and Analysis

{¶ 24} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*

7.

"Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 25} Bailey's assignment of error challenges the constitutionality of: (1) the initial traffic stop; (2) his continued detention for the purpose of field sobriety testing; and (3) his arrest. It also challenges the lawfulness of the trial court's decision not to vacate Bailey's ALS suspension.

### Sgt. Mulinix had reasonable, articulable suspicion to conduct a traffic stop on Bailey's vehicle.

{¶ 26} Bailey maintains that the trial court erred in finding that he committed a marked lanes violation, because none of the officers' dash cam videos observed the violations and because Officer Kusmierek testified that he did not turn on his dash cam at the earliest opportunity. Based on *United States v. Younis*, 890 F.Supp.2d 818 (N.D. Ohio 2012), Bailey contends that the "negligence" of the officers should "weigh heavily against their credibility."

{¶ 27} In *Younis*, the trial court discounted officer testimony because the officer failed to record repeated lane violations. As previously mentioned, however, the trial court was in the best position to determine the officers' credibility. This court's role is not to second guess the credibility determinations of the trial court; rather, it is to determine whether there are sufficient facts in the record to support the trial court's conclusion that officers had reasonable suspicion to initiate the traffic stop, reasonable

8.

suspicion to request that Bailey participate in field sobriety tests, and probable cause to arrest Bailey for operating a vehicle while under the influence of alcohol.

{¶ 28} "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed a traffic violation." *State v. Martorana*, 6th Dist. Sandusky No. S-22-011, 2023-Ohio-662, ¶ 20, citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.

{¶ 29} R.C. 4511.33(A)(1) provides that "[a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." The Supreme Court of Ohio has recognized that "[a] traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist [drive] over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Mays* at syllabus.

{¶ 30} In the instant case, Officers Mulinix and Kusmierek testified that they initially saw Bailey drive his vehicle off the side of the road and over a curb. Moments later – after Kusmierek activated the dashboard camera on his patrol car – the officers saw Bailey's vehicle brush against a curb a second time. The dash cam video shows an unfocused, frontal image of Bailey's vehicle's headlights, as Bailey is driving toward the officers, who were themselves traveling toward Bailey. At one point, the headlights can be seen briefly shaking. Officer Kusmierek testified that it was at that point that Bailey's

9.

vehicle brushed the curb. The officers' observation of Bailey once driving up over a curb and then brushing the curb with his vehicle provided them with reasonable suspicion that Bailey violated R.C. 4511.33(A) and, therefore, provided a sufficient basis to initiate a traffic stop. The initial stop of Bailey's vehicle was lawful.

**The Bowling Green police officers had reasonable, articulable suspicion to request Bailey to submit to sobriety tests.**

{¶ 31} Next, Bailey challenges the officers' request that he submit to field sobriety tests. He argues that, contrary to the trial court's finding, the dash cam video does not demonstrate that he spoke in a slurred fashion. In the absence of slurred speech, Bailey contends the remaining evidence of impairment was insufficient to give the officers a reasonable, articulable suspicion to request that he submit to field sobriety tests.

{¶ 32} "'[A]n officer may request a motorist to perform field sobriety tests after a traffic stop for a minor traffic violation where the officer has articulable facts that give rise to a reasonable suspicion that the motorist is intoxicated.'" *State v. Colby*, 2021-Ohio-4405, 181 N.E.3d 610, ¶ 17 (6th Dist.), citing *Cleveland v. Hyppolite*, 2016-Ohio-7399, 76 N.E.3d 539, ¶ 24 (8th Dist.). Courts determining whether the officer had reasonable suspicion look at the totality of the circumstances, rather than at any single factor. *Id.* at ¶ 17, citing *State v. Dye*, 2021-Ohio-3513, 178 N.E.3d 584, ¶ 65 (6th Dist.).

{¶ 33} The factors that may supply an officer with reasonable suspicion to conduct field sobriety tests include, but are not limited to:

10.

(1) the time of day that the stop occurred; (2) the area where the stop occurred; (3) whether there was erratic driving that might point to a lack of coordination; (4) the existence of a 'cognizable report' that the driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol in the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) 'the suspect's demeanor'; and (11) the suspect's admission of alcohol consumption.

*Id.* at ¶ 17, citing *Dye* at ¶ 65.

{¶ 34} This court has repeatedly held that "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes *and further indicia of intoxication * * ** reasonable suspicion exists." (emphasis sic.) *Id.*, citing *Dye* at ¶ 68.

{¶ 35} As an initial matter, a review of the dash cam video supports the trial court's finding, and the officers' testimony, that Bailey slurred his speech during the traffic stop. Due to the loudness of Bailey's vehicle, little of the discussion between Mulinix and Bailey could be discerned; however, from what can be heard, Bailey spoke with a slow, lazy drawl that could reasonably be perceived as impaired speech.

{¶ 36} In addition, the traffic stop occurred in the early morning hours following St. Patrick's Day. Bailey drove his vehicle in an erratic manner by driving over a curb

11.

and then brushing up against it.  When the officers pulled Bailey over, he immediately exited the car and then had difficulty following instructions to get back in it.  Officer Mulinix observed an odor of alcohol coming from the car and from Bailey's breath.  He noticed opened and unopened beer cans on the passenger side of the car and next to Bailey. Bailey, who was wearing a St. Patrick's Day themed necklace with a shot glass pendant, had glassy, bloodshot eyes and his speech was slightly slurred and lethargic.

{¶ 37} Accordingly, under the totality of the circumstances, the officers had a reasonable, articulable suspicion to request that Bailey submit to field sobriety tests.

**The Bowling Green police officers had probable cause to arrest Bailey for OVI.**

{¶ 38} Bailey next argues that officers lacked probable cause to arrest him because he did not demonstrate any impaired motor coordination.

{¶ 39} "'The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *State v. Bruck*, 6th Dist. Wood No WD-20-072, 2021-Ohio-2789, ¶ 23, citing *State v. Groszewski*, 183 Ohio App.3d 718, 2009-Ohio-4062, 918 N.E.2d 547, ¶ 22 (6th Dist.).  "When determining probable cause, the court must examine the totality of the facts and circumstances surrounding the arrest." *Id.*, citing *Groszewski* at ¶ 22. (Additional citation omitted.)

12.

{¶ 40} In the instant case, not only was Bailey's late-night driving – and subsequent behavior upon being stopped – erratic, his eyes were glassy and bloodshot, his speech was slurred and lethargic, and his driving attire included a St. Patrick's Day themed necklace with a shot glass pendant. The odor of alcohol emanated from both his truck – which contained opened and unopened beer cans that were in close proximity to the driver's seat – and from his breath. Field sobriety testing revealed a score of six out of six indicators on the HGN test. During the walk and turn test, Bailey was unsteady. He stepped off of the line and did not walk heel-to-toe. And during the one-leg test, Bailey "put his foot down and was swaying," and was "unable to keep his balance." Finally, Bailey failed to successfully recite the alphabet. Under these facts and circumstances, probable cause existed to believe that Bailey was driving under the influence.

{¶ 41} For all of the foregoing reasons, the trial court did not err in concluding that the officers had probable cause to arrest Bailey for OVI.

**The trial court did not err in refusing to vacate the ALS against Bailey**

{¶ 42} Finally, Bailey asserts that the trial court erred in its denial of his ALS appeal because officers lacked reasonable ground to believe that Bailey was operating a vehicle while under the influence. *See* R.C. 4511.191(D)(1). We disagree.

{¶ 43} In his appeal, Bailey had the burden of proving, by a preponderance of the evidence, that officers did not have a reasonable ground to believe that he was driving

13.

under the influence. *See Miracle v. Petit*, 3d Dist. Marion No. 9-19-50, 2020-Ohio-1567, ¶ 10-11; R.C. 4511.197(D). "Ohio courts have consistently applied the totality-of-the-circumstances test to determine if there were reasonable grounds to believe that a person had been operating a motor vehicle while under the influence of alcohol." *State v. McCaig*, 51 Ohio App.3d 94, 94, 554 N.E.2d 925 (6th Dist.1988), citing *Atwell v. State*, 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist.1973).

{¶ 44} As indicated above, under the circumstances of this case, probable cause existed to arrest appellant for driving under the influence. As the "probable cause" standard is a higher standard than the "reasonable ground" standard that is required for a license suspension, the "reasonable ground" standard has been met.

## IV. Conclusion

{¶ 45} The trial court did not err in denying the motion to suppress because the officers had: (1) reasonable, articulable suspicion to conduct a traffic stop on Bailey's vehicle; (2) reasonable, articulable suspicion to request Bailey to submit to sobriety tests; and (3) and probable cause to arrest Bailey for OVI. In addition, the trial court did not err in refusing to vacate the ALS against Bailey.

{¶ 46} Bailey's sole assignment of error is found not well-taken, and the judgment of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.        

_____
JUDGE

Christine E. Mayle, J.      

_____

Charles E. Sulek, J.        
CONCUR.

JUDGE

_____
JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.