[Cite as *State v. Garcia*, 2024-Ohio-1509.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                  Court of Appeals No. S-23-003

    Appellee                              Trial Court No.  21 CR 755

v.

Anthony J. Garcia                       **DECISION AND JUDGMENT**

    Appellant                             Decided: April 19, 2024

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

James H. Ellis, III, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgment by the Sandusky County Court of

Common Pleas, which sentenced appellant, Anthony J. Garcia, to serve six to 12 months

in prison, held in reserve for three years of community control supervision and up to six

months at a community-based correctional facility. The sentence was imposed by the trial

court after denying appellant's motion to suppress evidence, accepting his no-contest plea

to possession of a fentanyl-related compound, and convicting him of that offense. For the reasons set forth below, this court affirms the trial court's judgment.

## I. Background

{¶ 2} On October 4, 2021, a Sandusky County Grand Jury indicted appellant with possession of drugs, in violation of R.C. 2925.11(A), and a fifth-degree felony pursuant to R.C. 2925.11(C)(11)(a).

{¶ 3} The indictment arose from an incident on January 13, 2021, in Fremont, Sandusky County, Ohio, when someone called 9-1-1 that appellant, a known drug addict, had possibly overdosed and was unresponsive in an apartment. Two Fremont police officers and three Sandusky County EMS paramedics arrived nearly simultaneously, with Officer Huddleston arriving first by about one minute while Officer Dix remained outside a little longer. Appellant's mother greeted Officer Huddleston at the apartment entrance, permitted him entry, and showed him where appellant lay unmoving on the floor of the tiny kitchen. According to Officer Huddleston, "I found Mr. Anthony Garcia on his back in the kitchen who appeared to be overdosing. * * * His mom had told us that he wasn't responding, then I started performing sternum rubs and tried to call out to him with no response."

{¶ 4} When the three paramedics arrived, Officer Huddleston stopped the sternum rubs, but appellant's body, the paramedics, and their equipment blocked Officer Huddleston's exit from the tiny kitchen. While he remained there, Officer Huddleston saw the paramedics revive appellant with life-saving CPR. Eventually, the paramedics

2.

were able to get appellant to sit up, and then to stand to prepare to transport appellant by ambulance to a local hospital for further medical attention. When appellant stood up, a syringe loaded with an unknown substance dislodged from somewhere on his outer clothing and was found by the paramedics in plain view on the floor. A paramedic carefully handed the syringe to Officer Huddleston, who placed it on the kitchen counter behind him and away from everyone. The lead paramedic then requested Officer Huddleston search appellant for addition items that might pose a safety risk to appellant or anyone around him, whether in the apartment, in the ambulance, or at the hospital. According to Officer Huddleston, his main concern at that moment was, "safety for them, safety for everybody else, anything that may be around his person or his pockets. Anything that could cause, you know, physical harm to anybody." Officer Huddleston's search of appellant's jeans pockets yielded a bindle of tightly folded paper containing a white substance which, based on his experience and training, he believed was fentanyl and, if so, required extreme caution to handle. He also placed the bindle on the kitchen counter behind him and away from everyone.

{¶ 5} After the syringe and bindle were collected into secure containers by Officers Huddleston and Dix, appellee, state of Ohio, tested the bindle and confirmed it contained fentanyl. The grand jury indicted appellant with possession of a fentanyl-related compound. Appellant entered a not-guilty plea at his arraignment, and the matter proceeded toward a trial.

{¶ 6} On November 14, 2022, appellant filed a motion to suppress all evidence obtained during the warrantless search of appellant's clothing. Appellant argued, "An officer arrived first, but EMS arrived approximately 46 seconds later. At that time the need for an officer to render medical aid was immediately obviated. Thereafter, the officer(s) should have remained remain (sic.) outside the home, while the paramedics performed their work." Appellant argued no exigent circumstances existed to justify the warrantless search that produced evidence of drug paraphernalia and fentanyl. Consequently, appellant argues the evidence must be suppressed on the authority of *State v. Marshall*, 2022-Ohio-1533 (6th Dist.), *appeal allowed,* 2022-Ohio-3214, and *cause dismissed,* 2022-Ohio-4268.

{¶ 7} At the suppression hearing held on December 15, the trial court received testimony from two witnesses, Officers Huddleston and Dix, admitted two exhibits into evidence, including the police body-worn camera videos from each officer, and accepted the parties' stipulations of fact placed into the record. Officer Huddleston testified at the hearing regarding the exigent circumstances under which he searched appellant's clothing.

Q: So the EMS personnel wanted you to check [appellant's] pockets, or you would normally do that?

A: Both. Usually, when we are involved with EMS and we know they're going to be transported and – why we knew on this situation he was going to be transported 'cause CPR was done, so we knew that EMS would

be transporting him, and they know that we – they want us to check the pockets and make sure there's nothing else that's going to hurt them or him in the process.

Q: So is that a matter of officer and EMS safety?

A: Absolutely.

Q: So is that why his pockets were checked in this case?

A: Correct.

{¶ 8} Officer Dix testified that he arrived after Officer Huddleston and was not present in the tiny kitchen when the paramedics found the loaded syringe and asked Officer Huddleston to search appellant. However, Officer Dix was nearby speaking with appellant's mother "just – to more get a back story to relay with EMS. That way, we could kind of find out what was going on." When Officer Dix was asked at what point he believed a criminal investigation commenced, he replied, "I mean, I think after the needle was located, I would say that that would be the start of the criminal investigation, if you will." Officer Dix testified it was reasonable for Officer Huddleston to search appellant's jeans pocket because, "EMS normally asks us to check the people for their safety before they get on the ambulance, but even after the needle was said to be found in the area, so * * * just for safety."

{¶ 9} The trial court journalized its decision to deny appellant's motion to suppress on December 28, 2022. Plea negotiations ensued, and on February 6, 2023, appellant pled no contest to possession of drugs, a violation of R.C. 2925.11(A), and a

5.

fifth-degree felony pursuant to R.C. 2925.11(C)(11)(a). The trial court accepted appellant's no-contest plea, found appellant guilty of the offense, and sentenced appellant to serve six to 12 months in prison, held in reserve for three years of community control supervision and up to six months at a community-based correctional facility.

{¶ 10} Appellant timely appealed the trial court judgment setting forth one assignment of error:

"THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS."

## II. Motion to Suppress

{¶ 11} We review the trial court's denial of appellant's motion to suppress as a mixed question of fact and law. *State v. LaRosa*, 2021-Ohio-4060, ¶ 17, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. We accept the trial court's factual findings if they are supported by competent, credible evidence, but review de novo the trial court's legal conclusions. *Id.*

{¶ 12} We reviewed the trial court's decision and find it made a number of relevant findings supported by competent, credible evidence. Officers Huddleston and Dix were dispatched to appellant's apartment to assist EMS with an unresponsive person suspected of overdosing per the 9-1-1 caller, who was not appellant. Officer Huddleston's body-worn camera video shows he was "greeted by a female occupant of the apartment who permitted Huddleston's entrance. It was evident that Huddleston treated the situation upon his arrival as another overdose given his prior knowledge of the Defendant to be a

6.

known addict." During the police's encounter with appellant, "they discovered a syringe attached to his outer clothing which gave rise to search him further for the safety of the officers and EMT personnel who were providing care."

{¶ 13} The trial court found that the 9-1-1 caller told the dispatcher, "[T]here was someone in the apartment who appeared to be passed out, [and] it was reasonable for the officers to enter into the apartment when greeted by a concerned and responsive occupant who permitted such. And as the officers' testimony reveals, [their] goals were to see if there *was* a person who was in urgent need of their possible life-threatening assistance." (Emphasis sic.) Officer Huddleston found appellant unresponsive and immediately began providing medical aid before the paramedics took over and before drug evidence was seized.

{¶ 14} The trial court further determined the following sequence of events:

Once in the apartment, the officers' conduct was also reasonable. They were lawfully there and within moments after their arrival, EMT's arrived and were able to get the defendant to respond, stand and cooperate. While the Defendant was standing, an EMT discovered a syringe attached to the defendant's outer clothing which was handed to Huddleston. The EMT then requested officer Huddleston to search the Defendant further for possibly dangerous items (syringes, drugs, weapons, etc.). Found in the Defendant's front right pocket was suspected drugs which subsequent testing determined to be a fentanyl-related compound.

7.

{¶ 15} Next, we review de novo, without deference, the trial court's denial of appellant's motion to suppress and whether the foregoing facts, which we now must accept as true, satisfy the applicable legal standard. *State v. Bailey*, 2023-Ohio-1594, ¶ 24 (6th Dist.), citing *Burnside* at ¶ 8. Appellant urges this court to find the facts in this case are nearly identical to the facts in *Marshall*, where this court affirmed the trial court's grant of that defendant's motion to suppress the drug-related items seized by police after the paramedics arrived to treat the overdose. *Marshall*, however, can no longer be relied upon because that decision was vacated by the Ohio Supreme Court following his death while the appeal was pending. *Marshall*, 2022-Ohio-4268, (Table) ("On appellant's motion to dismiss and vacate * * * Motion to dismiss and vacate granted. Cause dismissed."). Nonetheless, even if *Marshall* had not been vacated, it is still distinguishable from this matter.

{¶ 16} In *Marshall*, the warrantless entry into the hotel room was the issue because the police arrived with, not before, EMS and actively began the warrantless search of the hotel room while EMS rendered aid to the defendant in the bathroom. *Marshall*, 2022-Ohio-1533 at ¶ 5. Here, appellant does not dispute the exigent circumstances of the warrantless entry into the apartment by Officer Huddleston, the paramedics, or Officer Dix because the 9-1-1 caller said that an unresponsive person was in the apartment, possibly from a drug overdose. Officer Huddleston's body-worn camera video shows he arrived first and was greeted by appellant's mother through an open door. The woman showed him where appellant lay on the floor of the tiny kitchen, and Officer

8.

Huddleston immediately began sternum rubs to appellant. Appellant remained unresponsive. Then the paramedics arrived and, in administering life-saving CPR to revive appellant, Officer Huddleston's exit from the tiny kitchen was blocked by appellant's body, the paramedics, and their equipment. When the paramedics prepared to transport appellant by ambulance to the hospital, suspected drug paraphernalia – the loaded syringe – fell in plain view from appellant's outer clothing. The lead paramedic carefully handed the syringe to Officer Huddleston and requested a safety search.

{¶ 17} In *Marshall*, the police were not lawfully present in the hotel room when they searched it. *Id.* at ¶ 18. Unlike *Marshall*, we find that Officer Huddleston and the paramedics were lawfully present in the tiny kitchen at the time the syringe was discovered in plain view and seized.[1] "The emergency justifies the warrantless entry, and, while lawfully present, the police may seize evidence in plain view." *State v. Levengood*, 2016-Ohio-1340, ¶ 20 (5th Dist.).

{¶ 18} Appellant focuses his assignment of error to dispute the warrantless search of his clothing following the plain view discovery of the syringe, arguing "there [was] no evidence of a risk to them from the Appellant." Citing *State v. Stanberry*, 2003-Ohio-5700, ¶ 21 (11th Dist.), appellant argues "safety" was a pretext to conduct a warrantless search as part of a police investigation: "It is clear from the totality of Officer Huddleston's testimony at the suppression hearing that, because Appellant was known to use illegal substances, Officer Huddleston intended to search Appellant's person as part

---

[1] Ultimately, appellant was not charged with an offense related to the syringe itself.

of an investigation after EMS personnel arrived to treat the Appellant for a drug overdose."

{¶ 19} Generally, a warrantless search is per se unreasonable unless a delineated exception applies. *Stanberry* at ¶ 14. The doctrine of exigency is one exception and would apply where Officer Huddleston was faced with the need to protect or preserve life or to avoid serious injury. *Id.* at ¶ 15. The exigency justifying the initial warrantless entry is subject to whether Officer Huddleston's subsequent movements were conservative, prudent, and reasonable. *Levengood* at ¶ 22.

{¶ 20} Contrary to appellant's argument, a loaded syringe with an unknown substance is evidence of a risk to those helping appellant on site, during ambulance transport, or at the hospital. It was reasonable for the lead paramedic to carefully hand the syringe to Officer Huddleston and to request an immediate search of appellant for anything else that might compromise safety. Officer Huddleston had probable cause to search appellant, and the fentanyl-filled bindle he found required extreme caution to handle with the assistance of Officer Dix.

{¶ 21} Appellant's reliance on *Stanberry* is misplaced, as that court found the warrantless search of the hospitalized defendant's unattended home was justified under exigent circumstances. "It was not unreasonable for the officers to conclude, after observing the severely melted candles downstairs, that other candles might be lit throughout the house. As such, it was incumbent upon the officers to make a reasonable investigation of appellant's home and extinguish any remaining candles." *Stanberry* at ¶

10.

23. Here, the loaded syringe with an unknown substance fell from appellant's outer clothing while he was receiving emergency aid. That circumstance caused an exigent safety concern for anyone who was in close contact with appellant and for anyone who would be in close contact with him during transportation to, and treatment at, the hospital. Officer Huddleston's search of appellant's clothing was then done in a conservative, prudent, and reasonable manner, as captured on his body-worn camera video.

{¶ 22} Upon de novo review, we find the warrantless search of appellant's clothing was justified by the doctrine of exigency.

{¶ 23} Appellant's assignment of error is not well-taken.

### III. Conclusion

{¶ 24} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.           _____

                                               JUDGE

Christine E. Mayle, J.        

                                      _____

Charles E. Sulek, P.J.                                 JUDGE
CONCUR.


                                      _____

                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.